J. G. and R. G., Plaintiffs-Co-Appellants,

v.

Deborah S. Wangard,
Defendant-Appellant-Petitioner,

Great Northern Insurance Company
and Pacific Indemnity Insurance Company,
Defendants-Respondents,

Steven C. Wangard, John Doe
and XYZ Corporation,
Defendants.

Supreme Court

*No. 2006AP818. Oral argument March 13, 2008.
—Decided July 16, 2008.*

2008 WI 99

(Also reported in 753 N.W.2d 475.)

329

For the defendant-appellant-petitioner there were briefs by *Francis H. LoCoco, Tamara Hayes O'Brien,* and *Whyte Hirschboeck Dudek S.C.,* Milwaukee, and oral argument by *Tamara Hayes O'Brien.*

For the defendants-respondents there was a brief by *James S. Smith, Wendy G. Gunderson,* and *Smith, Gunderson & Rowen, S.C.,* Brookfield, and oral argument by *Wendy G. Gunderson.*

¶ 1. DAVID T. PROSSER, J. This is a review of an unpublished decision and order of the court of appeals,[1] that summarily affirmed a judgment of the Waukesha County Circuit Court, Robert G. Mawdsley, Judge.

¶ 2. The case involves an insurance coverage dispute. The question presented is whether homeowner's

---

[1] *J.G. v. Wangard,* No. 2006AP818, unpublished order (Wis. Ct. App. Aug. 8, 2007).

insurance policies issued by Great Northern Insurance Company (Great Northern) and Pacific Indemnity Insurance Company (Pacific) to Steven and Deborah Wangard[2] provide coverage for the alleged negligence of Deborah in failing to prevent Steven's intentional sexual contact with J.G., a minor. The policies in question cover liability for "damages a covered person is legally obligated to pay for personal injury or property damage," but they contain exclusions that bar coverage for damages arising out of the intentional act of "any covered person."

¶ 3. The court of appeals affirmed the judgment of the circuit court, which held that the homeowner's policies in question do not cover Deborah's alleged negligence. The court of appeals determined that the instant case is controlled by its prior decisions in *Jessica M.F. v. Liberty Mutual Fire Insurance Co.,* 209 Wis. 2d 42, 561 N.W.2d 787 (Ct. App. 1997) and *Taryn E.F. v. Joshua M.C.,* 178 Wis. 2d 719, 505 N.W.2d 418 (Ct. App. 1993). The court noted that the intentional acts exclusions in the Wangards' policies preclude coverage for the intentional acts of "any covered person," i.e., any insured. Both Steven and Deborah are insureds under the policies. Since it is undisputed that Steven's sexual contact with J.G. was intentional, and despite the existence of clauses in the policies that apply coverage to each insured separately, the court of appeals found that Deborah's alleged negligence is not covered. We granted Deborah's petition for review.

¶ 4. We conclude that the result in this case is informed by the court of appeals' decisions in *Jessica*

---

[2] The Wangards were married during the events relevant to the plaintiffs' suit; they are now separated. Deborah and Steven Wangard will be referred to individually by first name and collectively as "the Wangards."

*M.F.* and *Taryn E.F.* The intentional acts exclusions in the Wangards' homeowner's policies bar coverage for Deborah's alleged negligence in failing to prevent Steven's intentional sexual contact with J.G. because the plaintiffs' damages—in the language of the Wangards' homeowner's policies—"[arose] out of an act intended by any covered person to cause personal injury." Furthermore, no insured would reasonably expect liability coverage for damages arising out of an act of sexual assault premised upon intentional sexual contact. Accordingly, we affirm the court of appeals.

## I. BACKGROUND

¶ 5. The relevant facts are not disputed. On February 23, 2005, plaintiffs J.G., a minor, and R.G., her mother, filed a civil complaint alleging that during a period from 2000 to 2003 Steven Wangard had sexual contact with J.G. at two residences owned by him and his wife Deborah, namely 855 Circle Drive and 14400 Juneau Boulevard, in Elm Grove, Wisconsin. J.G. was between the age of five and eight years old at the time Steven had sexual contact with her.

¶ 6. On October 7, 2004, Steven pled guilty to second-degree sexual assault of a child for having sexual contact with J.G., a violation of Wis. Stat. § 948.02(2).[3]

---

[3] Wisconsin Stat. § 948.02(2) (2003–04) states: "Whoever has sexual contact . . . with a person who has not attained the age of 16 years is guilty of a Class C felony."

Wisconsin Stat. § 948.01(5) (2003–04) defines "sexual contact":

> (5) "Sexual contact" means any of the following:
>
> (a) Intentional touching by the complainant or defendant, either directly or through clothing by the use of any body part or object, of the complainant's or defendant's intimate parts if that

The plaintiffs' complaint alleges several claims for relief against Steven that are premised upon his intentional sexual assaults of J.G.[4] We assume for purposes of this appeal that Steven's intentional wrongful conduct, which caused the plaintiffs' damages, has been established by his guilty plea as a matter of law.

¶ 7. The plaintiffs' complaint also alleges that Deborah negligently failed to prevent her husband from sexually abusing J.G. Specifically, the complaint's seventh claim for relief alleges that Deborah was negligent in the following ways:

> 33. That prior to all or some of Steven C. Wangard's sexual contacts with J.G. . . . Deborah S. Wangard knew or should have known that Steven C. Wangard had intentional sexual contact and/or sexual intercourse with other minors; that she knew or should have known that Steven C. Wangard had a propensity to have intentional sexual contact and/or sexual intercourse with minors; that despite such knowledge, Deborah S. Wangard was negligent in that she, among other

intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant.

(b) Intentional penile ejaculation of ejaculate or intentional emission of urine or feces by the defendant upon any part of the body clothed or unclothed of the complainant if that ejaculation or emission is either for the purpose of sexually degrading or sexually humiliating the complainant or for the purpose of sexually arousing or gratifying the defendant.

All subsequent references to the Wisconsin Statutes are to the 2005–06 version, unless otherwise noted.

[4] None of these claims is directly implicated in the instant appeal because no one has argued that Steven's intentional conduct is covered by the insurance policies in question. However, the allegations regarding Steven's intentional conduct are pertinent to our analysis of whether the intentional acts exclusion in the policies applies to Deborah.

things, did not warn J.G. and/or R.G. of such knowledge prior to all or some of Steven C. Wangard's sexual contacts with J.G. as alleged hereinabove; that she did not take any action to prevent Steven C. Wangard from being alone with J.G. prior to all or some of Steven C. Wangard's sexual contacts with J.G. as alleged hereinabove; that at all times material hereto, she negligently supervised J.G. while J.G. was in her care; and was otherwise negligent.

34. That the negligence of Deborah S. Wangard as alleged, was a direct and proximate cause of J.G.'s injuries and damages, as set forth hereinabove, subjecting Deborah S. Wangard to liability for compensatory and punitive damages in an amount to be determined by the trier of fact.

¶ 8. The complaint alleges that the Wangards' acts and omissions harmed J.G. and R.G., namely, that Steven's intentional sexual assaults of J.G. and Deborah's negligence in failing to prevent the assaults allegedly caused J.G. "severe, extreme, disabling and permanent emotional distress, pain, suffering, embarrassment, loss of self esteem, disgrace, humiliation, loss of enjoyment of life, psychological damages, injuries," and continuing expenses for medical and psychological treatment. The complaint also claims that Steven's intentional tortious conduct and Deborah's negligence have caused R.G. to suffer "the loss of J.G.'s society and companionship, past and future pecuniary losses, past and future medical and/or psychological expenses, severe emotional distress," and other injuries.

¶ 9. The residences where Steven sexually assaulted J.G. were insured by Great Northern and Pacific during the relevant time period. Great Northern insured the 14400 Juneau Boulevard residence. Pacific insured the 855 Circle Drive residence. After the plaintiffs filed suit, Great Northern and Pacific initially

337

assumed the defense of Steven and Deborah pursuant to the policies' liability coverage under a reservation of rights. On May 26, 2005, Great Northern and Pacific filed a motion to bifurcate and stay the plaintiffs' case so that the court could determine whether the policies covered the Wangards' potential civil liability.

¶ 10. The relevant language of the Great Northern and Pacific homeowner's policies is identical. The coverage provisions of the policies state: "We cover damages a covered person is legally obligated to pay for personal injury or property damage which take place anytime during the policy period and are caused by an occurrence, unless stated otherwise or an exclusion applies." The policies state that an "[o]ccurrence means a loss or accident to which this insurance applies occurring within the policy period." Although the policies name Steven alone as the insured party in the "Coverage Summary," a "covered person" includes "you or a family member." The policies also include language under the heading "Application of coverage" that reads: "Coverage applies separately to each covered person. However, this provision does not increase the amount of coverage for any one occurrence."[5]

¶ 11. The liability provisions of the Wangards' policies provide coverage for certain enumerated damages and injuries, while other harms caused by the insureds are excluded from coverage. "Personal injury" is covered by the policies and includes "bodily injury . . . shock, mental anguish, or mental injury." "Bodily injury" means "physical bodily harm, including sickness or disease that results from it, and required care, loss of services and resulting death."

---

[5] Throughout their briefs the parties have referred to this language as a "separation" or "severability" clause, and we will do so as well.

¶ 12. The policies exclude damages caused by the intentional acts of insureds. The policies state:

> Intentional acts. We do not cover any damages arising out of an act intended by any covered person to cause personal injury or property damage, even if the injury or damage is of a different degree or type than actually intended or expected. An intentional act is one whose consequences could have been foreseen by a reasonable person. But we do cover such damages if the act was intended to protect people or property unless another exclusion applies.

¶ 13. On July 20, 2005, Great Northern and Pacific moved for a declaratory ruling and to dismiss the case against them on grounds that the Wangards' homeowner's policies did not cover the losses alleged in the plaintiffs' complaint. The circuit court heard argument on the motion on December 5, 2005, and issued a written decision in favor of Great Northern and Pacific on February 20, 2006.

¶ 14. The circuit court held that the Wangards' homeowner's policies did not cover any of the claims alleged in the plaintiffs' complaint. With regard to the alleged negligence of Deborah, the court concluded that the intentional acts exclusion in the two policies barred coverage. The court found that "the language contained in the policy is not ambiguous nor is the policy as a whole contextually ambiguous." The court also found that "the language contained in the exclusion bars coverage regardless of the existence of a separation clause." The court cited *Hagen v. Gulrud,* 151 Wis. 2d 1, 6–7, 442 N.W.2d 570 (Ct. App. 1989), for two propositions: (1) one who purchases a homeowner's policy does not contemplate coverage for sexual misconduct of an insured; and (2) one would not anticipate sharing such a risk with other policyholders. The court also relied upon

*Jessica M.F.* to conclude that Deborah is not covered because she would not contemplate coverage for sexual assaults committed by Steven, despite the fact that she is arguably an "innocent spouse" and that the two policies include a provision that separates coverage as to each insured.

¶ 15. On March 20, 2006, the circuit court issued an order and judgment dismissing all claims against Great Northern and Pacific because the insurers owed no duty to defend or indemnify the Wangards under their homeowner's policies. Deborah appealed, and J.G. and R.G. cross-appealed.

¶ 16. The court of appeals summarily affirmed on August 8, 2007, holding that the Wangards' case is controlled by the court of appeals' prior decisions in *Jessica M.F.* and *Taryn E.F.* The court of appeals held that there was "no meaningful way to distinguish" these cases and that the intentional acts exclusion in the Wangards' policies precludes coverage for the intentional acts of "*any* covered person," i.e., *any* insured. Both Steven and Deborah are insureds under the two policies, and it is undisputed that Steven's sexual contact with J.G. was intentional. Thus, the court of appeals found that, despite the existence of a "severability clause" in the policies, Deborah's alleged negligence is not covered.

¶ 17. Deborah petitioned this court for review, which we granted on November 5, 2007.

## II. ANALYSIS

A. Standard of Review

¶ 18. In a declaratory judgment action, the granting or denying of relief is a matter within the discretion of the circuit court and is upheld absent an erroneous

340

exercise of discretion. *See Jones v. Secura Ins. Co.,* 2002 WI 11, ¶ 19, 249 Wis. 2d 623, 638 N.W.2d 575 (citation omitted). However, when the appropriateness of granting or denying declaratory relief depends on a question of law, our review is de novo. *Id.; Gulmire v. St. Paul Fire & Marine Ins. Co.,* 2004 WI App 18, ¶ 10, 269 Wis. 2d 501, 674 N.W.2d 629 (citation omitted); *Commercial Union Midwest Ins. Co. v. Vorbeck,* 2004 WI App 11, ¶ 7, 269 Wis. 2d 204, 674 N.W.2d 665 (citation omitted).

¶ 19. To resolve this case we must interpret the language of two insurance policies to determine whether they afford coverage for alleged negligence. Whether an insurance policy affords coverage is a question of insurance contract interpretation, which we review de novo. *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.,* 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65 (citation omitted); *Danbeck v. Am. Family Mut. Ins. Co.,* 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150 (citation omitted).

B. Discussion

¶ 20. This case involves a question of insurance coverage; therefore, we begin with a recitation of general principles, the pertinent language of the policies in question, and the relevant allegations in the plaintiffs' complaint.

¶ 21. "An insurance policy is a contract." *State Farm Mut. Auto. Ins. Co. v. Gillette,* 2002 WI 31, ¶ 25, 251 Wis. 2d 561, 641 N.W.2d 662. The same rules of construction that govern other contracts are applied to the language of insurance policies. *Folkman v. Qua-*

*mme,* 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857 (citing *Kremers-Urban Co. v. Am. Employers Ins. Co.,* 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984)). We read insurance policies "to further the insured's reasonable expectations of coverage while meeting the intent of both parties to the contract." *Tara N. v. Economy Fire & Cas. Ins. Co.,* 197 Wis. 2d 77, 88, 540 N.W.2d 26 (Ct. App. 1995) (citation omitted). A contract of insurance is not to be rewritten by the court to bind an insurer to a risk that the insurer did not contemplate and for which it has not been paid. *Smith v. Katz,* 226 Wis. 2d 798, 807, 595 N.W.2d 345 (1999); *Qualman v. Bruckmoser,* 163 Wis. 2d 361, 365, 471 N.W.2d 282 (Ct. App. 1991).

¶ 22. Coverage provided in a liability insurance policy is typically stated in terms of the insurer's duty to defend and/or indemnify the insured for losses or injury caused by the insured. *See Gross v. Lloyds of London Ins. Co.,* 121 Wis. 2d 78, 84, 358 N.W.2d 266 (1984); *Elliott v. Donahue,* 169 Wis. 2d 310, 320, 485 N.W.2d 403 (1992). "[A]n insurer's duty to defend its insured is triggered by comparing the allegations of the complaint to the terms of the insurance policy." *Everson v. Lorenz,* 2005 WI 51, ¶ 11, 280 Wis. 2d 1, 695 N.W.2d 298 (citation omitted). When comparing the allegations in the complaint to the provisions in the insurance policy, "[t]he words of an insurance policy are given their common and ordinary meaning." *Danbeck,* 245 Wis. 2d 186, ¶ 10 (citing *Henderson v. State Farm Mut. Auto. Ins. Co.,* 59 Wis. 2d 451, 457–59, 208 N.W.2d 423 (1973)). When an insurance policy provides coverage for even one claim made in a lawsuit, the insurer is obligated to defend the entire suit. *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.,* 2003 WI 33, ¶ 21, 261 Wis. 2d 4, 660 N.W.2d 666; *Doyle v. Engelke,* 219 Wis. 2d

277, 285 n.4, 580 N.W.2d 245 (1998) (citations omitted). "The duty to defend focuses on the nature of the claim and has nothing to do with the merits of the claim." *Smith,* 226 Wis. 2d at 806 (citing *Grieb v. Citizens Cas. Co.,* 33 Wis. 2d 552, 557–58, 148 N.W.2d 103 (1967)).

¶ 23. "The duty to defend is necessarily broader than the duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage." *Fireman's Fund,* 261 Wis. 2d 4, ¶ 20. Once the court resolves the question of indemnity in the insurer's favor, however, coverage is no longer open to debate. "An insurer need not defend a suit in which it has no economic interest." *Baumann v. Elliott,* 2005 WI App 186, ¶ 10, 286 Wis. 2d 667, 704 N.W.2d 361 (citing *Sch. Dist. of Shorewood v. Wausau Ins. Cos.,* 170 Wis. 2d 347, 364, 488 N.W.2d 82 (1992)).

¶ 24. The coverage issue in this case turns on a dispute over the applicability of an intentional acts exclusion in each policy, and, ultimately, its interaction with a severability clause. "Exclusions are narrowly or strictly construed against the insurer if their effect is uncertain." *Am. Girl,* 268 Wis. 2d 16, ¶ 24 (citing *Cardinal v. Leader Nat'l Ins. Co.,* 166 Wis. 2d 375, 382, 480 N.W.2d 1 (1992)). "However, an insurance contract must also be interpreted to mean what a reasonable person in the position of the insured would have understood the words of the contract to mean." *Tara N.,* 197 Wis. 2d at 90–91 (citing *Sch. Dist. of Shorewood,* 170 Wis. 2d at 367).

¶ 25. We turn to the pertinent language of the Wangards' homeowner's policies. First, the policies provide coverage for certain enumerated harms caused by an insured, namely, "damages a covered person is legally

obligated to pay for personal injury or property damage which take place anytime during the policy period and are caused by an occurrence, unless stated otherwise or an exclusion applies." "Personal injury" is covered by the policies and includes "bodily injury ... shock, mental anguish, or mental injury." "Bodily injury" means "physical bodily harm, including sickness or disease that results from it, and required care, loss of services and resulting death."

¶ 26. Presumably, the injuries covered by the policies would encompass the injuries alleged in the complaint. This point is not disputed; therefore, we will assume there would be initial coverage for at least some of the damages alleged.

¶ 27. Second, the policies name Steven Wangard as the insured party, but the policies define a "covered person" to include "you or a family member"; thus, Deborah, Steven's wife during the two policy periods, was also a covered insured.[6] The policies also include language under the heading "Application of coverage" that reads: "Coverage applies separately to each covered person."

¶ 28. Finally, the policies exclude damages arising out of the intentional acts of any insured person from coverage. Specifically, the policies state:

> Intentional acts. We do not cover any damages arising out of an act intended by *any covered person* to

---

[6] "You" is also a defined term in the policies. It means "the person named in the Coverage Summary, and a spouse who lives with that person." Steven is the "You" referred to in the Coverage Summary under the heading "Name and address of Insured," and Deborah lived with him and was his spouse during the relevant time period. Deborah would therefore be covered under the policies as an insured by the word "You."

cause personal injury or property damage, even if the injury or damage is of a different degree or type than actually intended or expected. An intentional act is one whose consequences could have been foreseen by a reasonable person. But we do cover such damages if the act was intended to protect people or property unless another exclusion applies. (Emphasis added.)

¶ 29. Having examined the policies, we turn to the relevant allegations in the plaintiffs' complaint. The allegations in the complaint stem from the intentional sexual assaults committed by Steven Wangard. The complaint alleges that between 2000 and 2003 Steven had sexual contact with J.G. at two residences owned by the Wangards that were insured by Great Northern and Pacific homeowner's policies. On October 7, 2004, Steven pled guilty to second-degree sexual assault of a child for having sexual contact with J.G. There is no dispute that Steven's wrongful conduct was intentional, that the consequences of his actions were foreseeable (at least to him), and that Steven's sexual contact with J.G. has been established as a matter of law by Steven's guilty plea.[7] Furthermore, there is no dispute that Steven's intentional acts, which allegedly caused harm to J.G. and R.G., are excluded from coverage under the policies by the intentional acts exclusion.

¶ 30. Moving to Deborah, the complaint alleges that Deborah was negligent in failing to prevent Steven's intentional sexual contact with J.G. Specifically, the complaint alleges that Deborah was negligent because she knew or should have known that:

---

[7] *See N.N. v. Moraine Mut. Ins. Co.,* 153 Wis. 2d 84, 91–93, 450 N.W.2d 445 (1990) (holding that an appellate court may, but is not required to, conclude as a matter of law that intent for purposes of civil liability is satisfied by a guilty plea to a crime involving an element of intentional conduct).

345

(1) Steven had intentional sexual contact and/or sexual intercourse with other minors; and (2) Steven had a propensity to have intentional sexual contact and/or sexual intercourse with minors. Deborah's alleged negligent acts and omissions are that she: (1) did not warn J.G. and/or R.G. of her knowledge of Steven's past sexual contacts with minors prior to Steven's sexual contacts with J.G.; (2) did not take any action to prevent Steven from being alone with J.G. prior to his sexual contacts with J.G.; and (3) negligently supervised J.G. while J.G. was in her care.

¶ 31. Keeping the policy language and allegations in the complaint in mind, we examine the disputed issue of coverage for Deborah's alleged negligence.

¶ 32. The circuit court and the court of appeals held that the intentional acts exclusion in the Wangards' policies controls and excludes Deborah from coverage because J.G. and R.G.'s damages arose out of the intentional acts of "any covered person," namely Steven. The court of appeals relied primarily on the express language of the policies and its prior decisions in *Jessica M.F.* and *Taryn E.F.* There is no dispute that *if* the express language of the intentional acts exclusion applies to Deborah, either directly because of her own negligence or indirectly because of Steven's intentional conduct, Deborah's negligence is not covered.

¶ 33. Deborah makes several arguments that the intentional acts exclusion is inapplicable to her. Deborah asserts that applying the intentional acts exclusion to bar coverage for her alleged negligence violates her reasonable expectations of coverage. She contends that the severability clause in each policy cannot be reconciled with the intentional acts exclusion and that this inconsistency must be resolved in favor of coverage. She also argues that *Jessica M.F.* and *Taryn E.F.* improperly

construed or disregarded the severability clauses at issue in those cases and are inconsistent with *Doyle v. Engelke, Gulmire v. St. Paul Fire & Marine Insurance Co.,* 2004 WI App 18, 269 Wis. 2d 501, 674 N.W.2d 629, and *Northwestern National Insurance Co. v. Nemetz,* 135 Wis. 2d 245, 400 N.W.2d 33 (Ct. App. 1986). Relying on *Folkman v. Quamme,*[8] Deborah asserts that the interaction of the intentional acts exclusion and severability

---

[8] In *Folkman v. Quamme,* this court reviewed a case involving the alleged ambiguity of a "split liability limits" endorsement to an automobile insurance policy. *Folkman v. Quamme,* 2003 WI 116, ¶ 1, 264 Wis. 2d 617, 665 N.W.2d 857. We concluded that the policy in question, read as a whole, did not present contextual ambiguity with regard to liability limits. *Id.,* ¶ 58.

The *Folkman* court set forth general principles to evaluate whether a clause in an insurance contract is contextually ambiguous when construed in relation to other parts of the contract. This court noted that "[i]nsurance policy language is ambiguous 'if it is susceptible to more than one reasonable interpretation.' " *Id.,* ¶ 13 (quoting *Danbeck v. Am. Family Mut. Ins. Co.,* 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150). "If there is an ambiguous clause in an insurance policy, we will construe that clause in favor of the insured." *Id.* (citation omitted).

A clear and unambiguous provision may be found ambiguous in the context of the entire policy. *Id.,* ¶ 19 (citations omitted). Courts are not required to mechanically apply a clear provision regardless of "the ambiguity created by the organization, labeling, explanation, inconsistency, omission, and text of the other provisions in the policy." *Id.* "Courts will interpret the words of an insurance contract against the insured when the interpretation conforms to what a reasonable person in the position of the insured would have understood the words to mean." *Id.,* ¶ 20 (citation omitted). However, "courts will not surrender the authority to construe insurance contracts in favor of the insured when a policy is so 'ambiguous or obscure,' or deceptive that it befuddles the understanding and expectations of a reasonable insured." *Id.* (citation omitted). "[C]ontex-

clause creates contextual ambiguity that must be resolved in favor of coverage. Finally, Deborah takes the position that *Jessica M.F.* was wrongly decided and that intent to injure cannot be inferred as a matter of law from allegations that an insured "should have known" of a spouse's abusive propensities.

¶ 34. To address these arguments, we begin with the two decisions relied upon by the court of appeals, *Jessica M.F.* and *Taryn E.F.*

¶ 35. In *Jessica M.F.* four grandchildren and their parents sought a declaration of coverage under their grandparents' homeowner's policies for their grandfather's alleged sexual assaults of the grandchildren. *Jessica M.F.,* 209 Wis. 2d at 44–45. The question of coverage turned on whether the intentional acts exclusion in the policies applied to preclude coverage for the alleged negligence of the grandmother when she failed to protect her grandchildren from the assaults. *Id.* at 45. The complaint alleged that the grandmother "knew or, in the exercise of reasonable care, should have known that [the grandfather] was engaging in sexual contact and engaging in sexually explicit conduct with [the grandchildren]." *Id.* at 46. Each of the policies in question included an intentional acts exclusion and also specified that coverage "applies separately to each insured." *Id.* at 47 n.7.

¶ 36. The court of appeals affirmed the circuit court's holding that the grandmother's negligence was excluded from coverage under the policies. *Id.* at 45, 60. First, the court of appeals traced a line of cases regarding homeowner's insurance coverage for sexual abuse. *Id.* at 50–53.

tual ambiguity in an insurance policy must be genuine and apparent on the face of the policy, if it is to upset the intentions of an insurer embodied in otherwise clear language." *Id.,* ¶ 29.

¶ 37. The court of appeals reviewed its decision in *K.A.G. v. Stanford,* 148 Wis. 2d 158, 434 N.W.2d 790 (Ct. App. 1988), which established that acts of sexual molestation against a minor are so certain to result in injury that intent to injure can be inferred for purposes of the application of an intentional acts exclusion. *Id.* at 165. The *K.A.G.* court observed that "no reasonable person would expect a homeowner's insurance policy to provide coverage for damages resulting from his sexual misconduct, especially when the language in the intentional act exclusion would alert a reasonable person that injury inflicted intentionally is not subject to coverage." *Id.* at 165–66.

¶ 38. Building on *K.A.G.,* the *Jessica M.F.* court noted that the court of appeals decision in *Hagen,* a case involving the question whether a homeowner's insurance policy provided coverage for sexual assault committed by the homeowner's son, indicated "that a person purchasing homeowner's insurance would not expect that he or she was insuring his or her children against liability for their sexual assaults." *Jessica M.F.,* 209 Wis. 2d at 51 (quoting *Hagen,* 151 Wis. 2d at 7). The *Hagen* court observed that the reasonable expectations of both insurer and insured indicated that both "would cringe at the very suggestion that they were buying and selling sexual assault insurance." *Hagen,* 151 Wis. 2d at 6–7 (citation omitted). Furthermore, one who purchases homeowner's insurance would not want to share that type of risk with other homeowner's policyholders. *Id.* (citations omitted).

¶ 39. The *Jessica M.F.* court concluded that these considerations apply with "at least equal force to a policy-holder's expectations with respect to sexual assaults committed by his or her spouse." *Jessica M.F.,* 209 Wis. 2d at 57.

¶ 40. The *Jessica M.F.* court then addressed the "severability of interest" clause in the policies and distinguished its earlier *Nemetz* decision, which held that, despite an intentional acts exclusion, a severability clause in a homeowner's liability policy preserved coverage for a wife when her husband committed arson of their tavern and a neighbor's adjoining property. *Id.* at 58 (discussing *Nemetz*). The court noted that "*Nemetz* considered whether an apparently *innocent* spouse retains separate coverage," and concluded that the grandmother in *Jessica M.F.* was not "innocent" because, based on the allegations in the complaint, she "knew or should have known of her husband's sexual abuse of their four grandchildren 'for several years.' " *Id.* at 58–59. Summarizing its holding, the *Jessica M.F.* court stated: "[W]e conclude that despite severability clauses and regardless of sexual misconduct exclusions, the intentional-acts exclusions precluded homeowner insurance coverage for the grandmother who allegedly knew or should have known of her husband's alleged sexual abuse of their grandchildren." *Id.* at 60.[9]

¶ 41. In *Taryn E.F.,* parents of a child that had been sexually molested by her 12–year-old babysitter sought a declaration that her babysitter's parents were

[9] We offer no analysis regarding the validity of the court of appeals' holding that the intentional acts exclusion in *Jessica M.F.* applied when the grandmother in that case "knew or should have known of her husband's alleged sexual abuse of their grandchildren." *Jessica M.F. v. Liberty Mutual Fire Insurance Co.,* 209 Wis. 2d 42, 60, 561 N.W.2d 787 (Ct. App. 1997).

As noted below, we do not rely on this specific holding to resolve the case at hand. Nor do we offer any comment on whether we believe Deborah Wangard was an "innocent" spouse, in the words of the *Jessica M.F.* court. *See id.* at 58–59. These issues are not relevant to our determination today.

covered by their homeowner's policy for potential liabil- ity stemming from the molestation. *Taryn E.F.,* 178 Wis. 2d at 721–22. The unambiguous language of the policy provided liability coverage for the young babysitter and both of his parents. *Id.* at 723. However, the policy excluded coverage for "any outrageous conduct on the part of any 'insured' consisting of any intentional, wanton, malicious acts." *Id.* The policy also excluded coverage for "sexual molestation," and contained a severability clause that stated: "Each person listed above is a separate *insured* under this policy, but this does not increase *our* limit of liability under this policy." *Id.* at 723–24. There was no question that the policy excluded coverage for the young babysitter. *Id.* at 723. *Taryn E.F.* therefore turned upon the applicability of the severability clause. *Id.* at 724–25.

¶ 42. Like the *Jessica M.F.* court, the *Taryn E.F.* court addressed the severability clause in light of its earlier *Nemetz* decision, and it distinguished *Nemetz. Id.* at 724–26. First, the *Taryn E.F.* court noted that the intentional acts exclusion "unambiguously denies coverage for all liability incurred by each and any insured as a result of certain conduct by any of the persons insured by the policy." *Id.* at 724. This is so because of the policy's use of the word "any," as opposed to "an" or "the," before the word "insured." *Id.* at 724–25. In *Nemetz,* the intentional acts exclusion used the phrases "an insured" and "the insured" to denote the parties excluded; therefore, "the insurers [in *Nemetz*] failed to adequately draft the policy to exclude coverage for both insureds based on the excludable acts of one insured." *Id.* at 724 (citing *Nemetz,* 135 Wis. 2d at 253–54 n.2, 256). The court held that the "any" language in *Taryn E.F.* was unambiguous, even

when read in context with the severability clause in the policy. *Id.* at 725.[10]

¶ 43. Second, the *Taryn E.F.* court rejected the argument that there is no logical or grammatical differ ence between "an" and "any." *Id.* The court noted that

---

[10] One insurance treatise cites *Taryn E.F. v. Joshua M.C.,* 178 Wis. 2d 719, 505 N.W.2d 418 (Ct. App. 1993), with approval and notes the important distinction between "the insured" and "any insured." The treatise states:

> Finally, it has been held that an "any insured" exclusion will be treated like a "the insured" exclusion if the policy contains a severability clause; that is, a provision stating that the "insurance applies separately to each insured." *Such a holding is not justifiable.* A severability clause provides that each insured will be treated independently under the policy. The fact remains, however, that as applied even independently to each insured, an "any insured" exclusion unambiguously eliminates coverage for each and every insured.

2 Allan D. Windt, *Insurance Claims and Disputes* § 11.8, at 11–160—11–163 (5th ed. 2007) (emphasis added) (footnotes omitted). *See also BP America, Inc. v. State Auto Prop. & Cas. Ins. Co.,* 148 P.3d 832, 840–41 (Okla. 2005) *as corrected on denial of rehearing* Oct. 30, 2006 (concluding that to hold that a severability clause affords coverage in contravention of an "any insured" exclusion "ignores the purpose of the severability clause—to afford each insured a full measure of coverage up to the policy limits, rather than to negate bargained-for and plainly-worded exclusions" and that "[t]he separation of in- sureds clause has no effect on the clear language of the exclusionary clause. Simply, a claim made against any insured is excluded. The purpose of severability is not to negate plainly worded exclusions."); *Nw. G.F. Mut. Ins. Co. v. Norgard,* 518 N.W.2d 179, 183 (N.D. 1994) ("[t]he purpose of severability clauses is to spread protection, to the limits of coverage, among all of the . . . insureds. The purpose is not to negate bargained-for exclusions which are plainly worded.") (quoting *Nat'l Ins. Underwriters v. Lexington Flying Club, Inc.,* 603 S.W.2d 490, 492 (Ky. App. 1980)).

dictionary definitions of these words distinguish them based on the fact that "an" refers to one object and "any" refers to one or more objects of a certain type. *Id.* at 725–26 (citing *Webster's Third New Int'l Dictionary* 1, 75, 97 (1976)). The court also cited persuasive case law from Colorado for the proposition that use of the word "any," as opposed to "an," in an exclusion "unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured." *Id.* at 726 (quoting *Chacon v. Am. Family Mut. Ins. Co.,* 788 P.2d 748, 751 (Colo. 1990)).[11]

¶ 44. The *Taryn E.F.* court concluded that "the term 'any insured' unambiguously precludes coverage

---

[11] In *Chacon,* the Colorado Supreme Court held that the phrase "any insured" in an intentional acts exclusion "clearly and unambiguously expresses an intention to deny coverage to all insureds when damage is intended or expected as a result of the actions of any insured." *Chacon v. Am. Family Mut. Ins. Co.,* 788 P.2d 748, 752 (Colo. 1990).

*Chacon* involved a question of coverage for the parents of a 10–year-old boy who vandalized a school. *Id.* at 749. The court construed the parents' homeowner's policy, which contained an intentional acts exclusion barring coverage for property damage caused by the intentional acts of "any insured" and a severability clause that provided that "this insurance applies separately to each insured." *Id.* at 750. The Colorado court noted that the majority of courts that have considered the issue of coverage in similar policies have held that "unlike the phrase 'the insured,' the phrase 'any insured' unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured." *Id.* at 751 (citation and internal quotation marks omitted). In concluding that there was no coverage, the Colorado Supreme Court noted that "[t]he inclusion of a severability clause within the contract is not inconsistent with the creation of a blanket exclusion for intentional acts. Instead, the inquiry is whether the contract indicates that the parties intended such a result." *Id.* at 752 n.6.

to all persons covered by the policy if any one of them engages in excludable conduct." *Id.* at 727.

¶ 45. The logic of the lower courts' application of *Jessica M.F.* and *Taryn E.F.* to Deborah's case is evident. We agree with the analysis in *Taryn E.F.* and conclude that Great Northern and Pacific's use of the phrase "any covered person" in the policies' intentional acts exclusions, like the phrase "any insured" in the *Taryn E.F.* policy, unambiguously precludes coverage for all insureds. *Taryn E.F.,* 178 Wis. 2d at 727.

¶ 46. The express language of the two homeowner's policies in question broadly excludes from coverage "any damages *arising out of* an act intended by *any covered person* to cause personal injury or property damage." (Emphasis added.) Without considering whether Deborah's negligent conduct was itself "intentional," as *Jessica M.F.* might imply, it is clear that J.G.'s and R.G.'s alleged damages arose out of Steven's intentional wrongful conduct. For this reason, the exclusion plainly bars coverage as to Steven and to Deborah if, as is undisputed, J.G. and R.G.'s personal injury damages arose out of Steven's intentional sexual contact with J.G.

¶ 47. We also agree with the reasoning of the *Taryn E.F.* court that the existence of a severability clause does not change this analysis. *Id.* at 725. "[O]ur objective is to further the insured's reasonable expectations of coverage while meeting the intent of both parties to the contract." *Everson,* 280 Wis. 2d 1, ¶ 14 (quoting *Benjamin v. Dohm,* 189 Wis. 2d 352, 359, 525 N.W.2d 371 (Ct. App. 1994)). It is inescapable that the policies, even when applied separately to Steven and Deborah as if they were distinct contracts, would include Steven Wangard, either explicitly by name or implicitly by status in their Coverage Summary. Steven

would continue to fall under "any insured" for purposes of the intentional acts exclusion in Deborah's "separate" policies. It is not reasonable to suggest that "separate" policies owned by Deborah that explicitly *name Steven as an insured* in their Coverage Summary under the heading "Name and address of *Insured*," would not regard Steven as an insured subject to the intentional acts exclusion. (Emphasis added.) Furthermore, the policies state that the "You" that constitutes a "covered person" under the policies "means the person named in the Coverage Summary." The severability clause cannot reasonably be interpreted to eliminate express language in the policies referencing Steven by name in the Coverage Summary.[12]

¶ 48. Under this construction we therefore reject Deborah's contention that the policies are contextually ambiguous under the standards set forth in *Folkman v. Quamme*, 264 Wis. 2d 617, ¶¶ 16–35. Use of "any covered person" in the exclusion, coupled with the fact that Steven is a named insured even if coverage is

---

[12] We need not speculate about the purpose of the severability clause in these policies. However, Great Northern and Pacific's brief indicates that there are several exclusions in the policies where "a covered person," as opposed to "any covered person," is the language used. Arguably, "a covered person" might apply differently in some contexts than "any covered person."

In any event, use of "any insured" in the policies does not strip the severability clause of all meaning. *See* 2 Allan D. Windt, *Insurance Claims and Disputes* § 11.8, at 11–164 (5th ed. 2007) (rejecting the position of courts that have "held . . . that a severability clause renders an 'any insured' exclusion meaningless . . . on the basis that, otherwise, the severability clause would itself be meaningless" and noting that "[a] severability clause would still have meaning in a variety of contexts.") (footnote omitted).

applied separately to Deborah, leads us to conclude that a reasonable interpretation of the Wangards' policies excludes coverage for both Steven and Deborah on these facts.

¶ 49. Because of the unambiguous language in the policies, we also reject Deborah's arguments that the court of appeals' decision in this case is inconsistent with the construction of the policies in *Nemetz, Doyle,* and *Gulmire.*

¶ 50. As indicated by the *Taryn E.F.* court, *Nemetz* is distinguishable from cases like the instant case because the exclusion in *Nemetz* referred to "an insured" and "the insured" in the intentional acts exclusion instead of "any" insured or covered person. *Taryn E.F.,* 178 Wis. 2d at 724; *see Nemetz,* 135 Wis. 2d at 254. Here, the intent to exclude damages arising from the intentional acts of "any covered person" from coverage is unambiguous. Furthermore, the policies here were phrased in a way that Steven remained a named insured regardless of whether the policies were treated as applying separately to Deborah.

¶ 51. *Doyle* is also inapposite. In *Doyle,* this court reviewed a duty to defend case involving a claim of negligent supervision against an employer. *Doyle,* 219 Wis. 2d at 281. The employer's insurer, St. Paul Fire & Marine Insurance Company (St. Paul), sought a declaration that the comprehensive general liability policy it issued to the employer did not cover the employer's negligent supervision of its employees, which allegedly resulted in harm to the plaintiff. *Id.* at 286. In construing an intentional acts exclusion that indicated that St. Paul would not "cover bodily injury . . . that's . . . intended by the protected person," this court held the exclusion inapplicable because the negligent supervision claim alleged no acts by the employer intended to

356

cause bodily harm. *Id.* at 291. The court noted that its interpretation was strengthened by the severability clause in the policy, which read: "Separation of protected persons. We'll apply this agreement: to each protected person named . . . as if that protected person was the only one named there; and separately to each other protected person." *Id.* at 291 n.7.

¶ 52. In the Wangards' case, the severability clause reads: "Coverage applies separately to each covered person." Unlike *Doyle,* there is no express or implied intent in the language of the Wangards' policies that the contracts apply to Deborah and Steven individually "as if [he or she] was the *only one named." Id.* (emphasis added). Such a construction would be unreasonable on the instant facts because: (1) the express language of the intentional acts exclusion here refers to "*any* covered person," (emphasis added); and (2) the Coverage Summary names Steven as a covered insured, regardless of the fact that coverage applies separately to Deborah.

¶ 53. *Gulmire* is similarly distinguishable from the Wangards' case. In *Gulmire,* plaintiff Mary Gulmire (Gulmire) was injured when a co-worker, Floyd Klister (Klister), struck her with a vehicle while both were acting in the course of their employment for Fox Valley Auto Auction (Fox Valley). *Gulmire,* 269 Wis. 2d 501, ¶ 3. Gulmire sued Klister, Klister's insurer, and Fox Valley's insurer, St. Paul Fire & Marine Insurance Company (St. Paul). *Id.* The commercial automobile liability policy issued by St. Paul contained a fellow employee exclusion that stated that St. Paul would not "cover bodily injury to a fellow employee of any protected person arising out of and in the course of the fellow employee's employment *by you." Id.,* ¶ 29 (emphasis added). "You" referred to three named insureds,

Fox Valley, Fox Valley Wholesale Company, and Gerald Sheriff, owner of the businesses, and "any permitted user," which included Klister. *Id.*, ¶ 22. The policy also included severability clause provisions similar to those in *Doyle,* which is not surprising as St. Paul issued the policies in both cases. *Id.*, ¶ 24; *Doyle,* 219 Wis. 2d at 291 n.7. However, unlike *Doyle,* the severability clause provisions in *Gulmire* indicated that the policy applied to named insureds as if they were the "only one named," and to "other protected person[s]" "separately." *Gulmire,* 269 Wis. 2d 501, ¶ 24.

¶ 54. Gulmire successfully argued that the fellow employee exclusion was inapplicable because the severability clause created separate policies as to each insured, thereby removing Klister from the "by you" in the exclusion. *Id.*, ¶ 29. If the "by you" were eliminated, the court of appeals stated, the exclusion would have applied because Gulmire, as a "fellow employee" of Klister, a "protected person," was injured by Klister in the course of Klister's employment. *Id.*, ¶ 29 n.8. The court indicated that under such circumstances the exclusion would have applied "regardless of the separation clause." *Id.*

¶ 55. The *Gulmire* court focused its decision on the fact that the words "by you" in the fellow employee exclusion made the exclusion inapplicable to Klister. *Id.*, ¶ 29. In the Wangards' policies, there is no similar qualifying language that limits the intentional acts exclusions' applicability. Thus, the Wangards' case is similar to the circumstance indicated by the *Gulmire* footnote, and coverage is barred "regardless of the separation clause." *Id.*, ¶ 29 n.8.

¶ 56. Deborah also asserts that the court of appeals' interpretation of the intentional acts exclusion in the Wangards' policies violates her reasonable expecta-

tions of coverage for her negligence in failing to prevent Steven from having sexual contact with J.G. We disagree for two reasons. As noted above, the policies in question unambiguously state that personal injury damages "arising out of" the intentional acts of "any covered person" are excluded from coverage. Deborah cannot reasonably argue that this policy language should be construed to cover the damages arising out of the intentional sexual contact with J.G. by her husband Steven, a covered person.

¶ 57. In addition, as the court of appeals recognized in *Jessica M.F.*, an insured cannot reasonably expect coverage for harms resulting from sexual assaults committed by one's spouse. *Jessica M.F.*, 209 Wis. 2d at 57; *see also K.A.G.*, 148 Wis. 2d at 165–66; *Hagen*, 151 Wis. 2d at 6–7. As the court of appeals noted in *Hagen*, "[t]he average person purchasing homeowner's insurance would cringe at the very suggestion that [the person] was paying for such coverage. And certainly [the person] would not want to share that type of risk with other homeowner's policyholders." *Id.* at 6–7 (quoting *Rodriguez v. Williams*, 713 P.2d 135, 137–38 (Wash. Ct. App. 1986); *Altena v. United Fire & Cas. Co.*, 422 N.W.2d 485, 490 (Iowa 1988) (quoting *Rodriquez*)).

¶ 58. We need not reach Deborah's argument that *Jessica M.F.* was wrongly decided. Deborah argues that because the *Jessica M.F.* court conflated the alleged negligence of an "innocent" insured with intentional conduct, the court wrongly applied the intentional acts exclusion in question. *See Jessica M.F.*, 209 Wis. 2d at 54 (indicating that the grandmother in that case allegedly "knew" of her husband's sexual abuse of the grandchildren; therefore, she "expected or intended" the resultant harm). Although the decision in *Jessica M.F.*

is arguably specific to a sexual assault fact situation, we do not rely upon *Jessica M.F.* for a proposition that Deborah's allegedly negligent conduct amounted to intentional conduct, directly implicating the application of the intentional acts exclusion in the policies to Deborah. We simply do not reach Deborah's alternative argument regarding *Jessica M.F.*

¶ 59. In sum, *Jessica M.F.* and *Taryn E.F.* inform the outcome in this case. The intentional acts exclusion in the Wangards' homeowner's policies excludes coverage for damages "arising out of an act intended by any covered person to cause personal injury." Steven is a "covered person" under the Wangards' policies, and J.G.'s and R.G.'s injuries allegedly arose out of his intentional acts. Deborah has no reasonable expectation of coverage for damages arising out of Steven's intentional sexual contact with J.G.; therefore, the intentional acts exclusion in the Wangards' homeowner's policies applies and excludes coverage for the alleged negligence of Deborah.

## III. CONCLUSION

¶ 60. We conclude that the result in this case is informed by the court of appeals' decisions in *Jessica M.F.* and *Taryn E.F.* The intentional acts exclusions in the Wangards' homeowner's policies bar coverage for Deborah's alleged negligence in failing to prevent Steven's intentional sexual contact with J.G. because the plaintiffs' damages—in the language of the Wangards' homeowner's policies—"[arose] out of an act intended by any covered person to cause personal injury." Furthermore, no insured would reasonably expect liability coverage for damages arising out of an act

of sexual assault premised upon intentional sexual contact. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 61. ANN WALSH BRADLEY, J. (*dissenting*). The majority holds here that "no insured would reasonably expect liability coverage for damages arising out of an act of sexual assault premised upon intentional sexual contact." Majority op., ¶ 4. The cases that the majority cites as informing this holding are also cases involving intentional acts of sexual assault. *Id.*; *see Jessica M.F. v. Liberty Mut. Fire Ins. Co.*, 209 Wis. 2d 42, 561 N.W.2d 787 (Ct. App. 1997); *Taryn E.F. v. Joshua M.C.,* 178 Wis. 2d 719, 505 N.W.2d 418 (Ct. App. 1993).

¶ 62. I write separately to emphasize that the majority holding today is limited to cases involving the intentional act of sexual assault. As the court of appeals in *Jessica M.F.* explained, cases involving sexual assault differ from cases involving harms from other sorts of intentional acts. 209 Wis. 2d at 58.[1] The majority follows *Jessica M.F.* in precluding separate coverage only in cases involving intentional sexual assault.

¶ 63. I also write separately because of a problem in the majority's interpretation of the severability clause and the relation of that clause to the intentional

---

[1] The court of appeals distinguished *Jessica M.F.* from an earlier decision involving arson, *Northwestern National Insurance Co. v. Nemetz,* 135 Wis. 2d 245, 400 N.W.2d 33 (Ct. App. 1986). The court stated that because *Nemetz* dealt with arson it "did not encounter the special considerations that arise in the context of child sexual abuse, particularly within a family." *Jessica M.F. v. Liberty Mut. Fire Ins. Co.*, 209 Wis. 2d 42, 58, 561 N.W.2d 787 (Ct. App. 1997).

acts exclusion.[2] The majority's interpretation of the severability clause contradicts its express language and our precedent, which require that coverage apply "*separately* to each insured." (Emphasis added.) As a result of its erroneous interpretation, the majority concludes that the intentional acts exclusion trumps the severability clause.

¶ 64. I conclude instead that the express language of the severability clause applying the policies separately to each insured directly contradicts the intentional acts exclusion. This contradiction renders the Wangards' policy contextually ambiguous. Because we construe ambiguous insurance contracts in favor of the insured, Deborah is entitled to coverage. Accordingly, I respectfully dissent.

¶ 65. This case centers on two provisions in the Wangards' insurance policies. One is the intentional acts exclusion:

> We do not cover any damages arising out of an act intended by any covered person to cause personal injury . . . even if the injury or damages is of a different degree or type than actually intended or expected. An intentional act is one whose consequences could have been foreseen by a reasonable person . . . .

¶ 66. The majority's analysis focuses on the phrase "any covered person." Because Steven Wangard is a covered person, the intentional acts exclusion applies to his intentional acts. Majority op., ¶ 32. Looking at the

---

[2] As the majority notes, there are two different insurance policies involved. The language of the relevant portions of the policies is identical. In order to simplify, I refer to the severability clauses and the intentional acts exclusions in the singular.

362

language of the exclusion in isolation, coverage would not extend to damages arising out of Steven's actions here.

¶ 67. The other provision at issue is the severability clause. It requires that coverage be applied "separately" to each insured:

> Coverage applies separately to each covered person. However this provision does not increase the amount of coverage for any one occurrence.

¶ 68. The majority determines that because Steven Wangard is a named insured on each of the Wangards' policies Deborah cannot receive coverage, despite the promise of the severability clause that "[c]overage applies separately to each covered person." Majority op., ¶ 52. It maintains that this case is distinguishable from a more recent decision, *Gulmire*,[3] where the court of appeals determined that a severability clause required coverage despite the presence of an exclusion in the policy. Majority op., ¶¶ 53–54.

I

¶ 69. The majority misinterprets the severability clause. To begin, the language of the severability clause is clear on its face: "Coverage applies separately to each covered person." Deborah is a covered person, and coverage must apply to her separately from each other covered person, including Steven. Applying coverage to Deborah separately from Steven would require that Steven's actions not bear upon Deborah's coverage. Otherwise, coverage is linked, not separate.

¶ 70. The majority seeks to circumvent the express language of the severability clause by arguing

---

[3] *Gulmire v. St. Paul Fire & Marine Ins. Co.*, 2004 WI App 18, 269 Wis. 2d 501, 674 N.W.2d 629.

that even if the Wangards' policies were applied separately, "as if they were distinct contracts, [they] would include Steven Wangard, either explicitly by name or implicitly by status in their Coverage Summary." Majority op., ¶ 47. The argument appears to confuse the notion of separate coverage with the existence of separate contracts. Whether there are separate contracts, each with Steven Wangard as a named insured, tells us nothing about what it means for *coverage* to be separate. Having a "coverage" summary that includes Steven conflicts with the claim that Deborah's coverage is applied separately from Steven.

¶ 71. More importantly, the majority's argument contradicts the language of the severability clause. How can coverage apply "separately to each insured" when Deborah's coverage is, as the majority requires, inextricably connected to Steven Wangard's coverage?

¶ 72. The majority's interpretation of the severability clause also conflicts with our precedent. In *Gulmire v. St. Paul Fire & Marine Insurance Co.,* the court of appeals examined the relationship between a severability clause and a fellow employee exclusion. 2004 WI App 18, 269 Wis. 2d 501, 674 N.W.2d 629. The severability clause at issue had two parts. The first part stated that coverage applied "to each protected person named in the Introduction as if that protected person was the only one named there . . ." *Id.,* ¶ 24. The second part of the clause had almost identical language to the clause at issue here, stating that coverage was to apply "separately to each other protected person." *Id.*

¶ 73. The court of appeals focused on the second part of the clause. It determined that "separately" means applying "independently" or "individually." *Id.,* ¶ 28. Accordingly, the court concluded that the party

364

causing injury must be "treated in an independent manner such that he is detached from all other protected persons." *Id.*

¶ 74. The majority seeks to distinguish *Gulmire* from the present case by focusing on the court of appeals' discussion of the fellow employee exclusion. Majority op., ¶ 55. The problem with the majority's argument is that the court of appeals' discussion of the fellow employee exclusion is independent of its interpretation of the severability clause, and it is the interpretation of the severability clause that is relevant to the present case.

¶ 75. In other words, in *Gulmire* the court of appeals interpreted language almost identical to the language in the severability clause here to mean that each covered person must be treated independently, "such that [the insured] is detached from all other protected persons." *Gulmire,* ¶ 28. Treating Deborah as detached from Steven would require providing coverage, regardless of Steven's intentional actions. Basing a coverage decision for Deborah on Steven's actions is incompatible with treating Deborah independently and detached from all other protected persons.

II

¶ 76. The insurance policies in this case have one provision that excludes coverage for Deborah for damages arising out of Steven's intentional acts. The policies also have a different provision requiring that Deborah's coverage must be provided without consideration of Steven. The provisions directly contradict each other.

¶ 77. Insurance provisions cannot be read in isolation. *State Farm Mut. Auto. Ins. Co. v. Bailey,* 2007 WI 90, ¶ 31, 302 Wis. 2d 409, 734 N.W.2d 386. Rather, the intentional acts exclusion must be read in conjunction with the severability clause.

¶ 78. Reading the two provisions here in conjunction, the Wangards' policies are susceptible to more than one reasonable interpretation. An ordinary insured could reasonably interpret the policies here such that (1) the intentional acts exclusion trumps the express language of the severability clause or (2) the severability clause trumps the express language of the intentional acts exclusion. Where provisions in an insurance policy are reasonably susceptible to more than one interpretation, they are contextually ambiguous. *Folkman v. Quamme,* 2003 WI 116, ¶ 29, 264 Wis. 2d 617, 665 N.W.2d 857.

¶ 79. In *Folkman,* this court determined that in order to avoid contextual ambiguity, policies "should avoid inconsistent provisions, provisions that build up false expectations, and provisions that produce reasonable alternative meanings." *Id.,* ¶ 31. The policies here failed to follow our admonition.

¶ 80. By misinterpreting the severability clause and failing to apply coverage separately, the majority concludes that the intentional acts exclusion trumps the severability clause. However, when the severability clause is interpreted according to its express language and our precedent, a different conclusion is required.

¶ 81. It is a longstanding principle that courts will interpret policies in favor of the insured (that is, in favor of coverage) where the policy is contextually ambiguous. *Id.,* ¶ 13. Because the policy provisions here are contextually ambiguous, we must construe them in favor of coverage. That is, we must apply the severability clause as worded: coverage applies to Deborah separately from Steven.[4]

---

[4] This is the approach taken in a number of jurisdictions. *See Premier Ins. Co. v. Adams,* 632 So. 2d 1054 (Fla. App. 1994);

¶ 82. In sum, the express language of the severability clause and Wisconsin precedent require that coverage be applied to Deborah independently from Steven, regardless of Steven's intentional acts. The severability clause directly contradicts the intentional acts exclusion, rendering the policies contextually ambiguous. Because we construe contextually ambiguous insurance policies in favor of coverage, Deborah should receive coverage here. Accordingly, I respectfully dissent.

¶ 83. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice LOUIS B. BUTLER, JR. join this dissent.

¶ 84. LOUIS B. BUTLER, JR., J. (*dissenting*). I join Justice Bradley's dissent. I agree with Justice Bradley's dissent that the intentional acts exclusion and the severability clauses of the Wangards' insurance policies, read in conjunction, at best create ambiguity as to the issue of whether Deborah Wangard's negligent acts may be considered separately from her husband's intentional acts for purposes of insurance coverage. I disagree with the majority that the intentional acts exclusion clauses in the policies bar coverage for "Deborah's alleged negligence in failing to prevent Steven's intentional sexual contact with J.G. because the plaintiffs' damages . . . '[arose] out of an act intended by any covered person to cause personal injury.' " Majority op., ¶ 4.

¶ 85. The language of the intentional act exclusion clauses contained in the insurance policies precludes coverage for damages arising out of intentional acts. *See* majority op., ¶ 12 ("We do not cover any damages arising out of an act intended by any covered person to cause personal injury or property damage . . . ."). Although it is

*West Bend Mut. Ins. Co. v. Salemi*, 158 N.E.2d 785 (Ill. App. 1987); *Brumley v. Lee,* 963 P.2d 1224 (Kansas 1998).

clear that coverage for damages attributable to Steven's intentional acts is precluded by the intentional acts exclusion clauses, it is not clear that damages attributable to Deborah's negligent acts are also excluded.

¶ 86. There is nothing in the intentional acts exclusion clauses indicating that negligent acts are excluded from coverage, or that Deborah's alleged negligence should be conflated with her husband's alleged intentional acts. Although the intentional acts exclusion clauses exclude from coverage "any damages arising out of an act intended by any covered person to cause personal injury or property damage," that language does not indicate that any damages arising out of *a different person's negligent acts* are similarly excluded.

¶ 87. The complaint against Steven and Deborah Wangard does not allege that all of the damages arose out of Steven's intentional acts. Rather, the complaint alleges that damages also arose out of Deborah's negligence, stating at paragraph 15 of the complaint that "as a result of Steven C. Wangard's intentional tortuous conduct, as herein alleged, and Deborah S. Wangard's causal negligence as herein alleged, J.G. has suffered and continues to suffer" a number of injuries, expenses and other damages. The complaint's seventh claim for relief alleges that Deborah was negligent in that she did not warn J.G. of her actual or constructive knowledge of Steven's propensities, that she did not take any action to prevent him from being alone with J.G., that she negligently supervised J.G. while J.G. was in her care, and was otherwise negligent. The complaint further alleges that Deborah's negligence was a direct and proximate cause of J.G.'s injuries.

¶ 88. If the majority means to equate Steven's intentional acts with Deborah's negligent acts, such

368

conflation of claims is not in accord with the manner in which different claims are treated by Wisconsin courts in insurance coverage cases. This is the case for two primary reasons.

¶ 89. First, *Doyle v. Engelke,* 219 Wis. 2d 277, 580 N.W.2d 245 (1998),[1] clearly establishes that if any alleged claim could be covered by a policy, coverage must be provided even if the complaint also alleges claims that are excluded. Thus, even without consideration of the severability clause in this case, we must determine whether there is coverage for the negligence claims against Deborah independently from our examination of whether there is coverage for Steven's intentional conduct.

¶ 90. Second, to the extent that the majority appears to view the intentional acts exclusion clause as unambiguously imputing Steven's intentional acts to his wife's negligent acts, such an imposition of vicarious liability violates the rule of law we have generally established against imputing one spouse's conduct to another in an insurance coverage contract:

> This court rejects the invitation to invent a doctrine that a spouse should be denied recovery on an insurance contract because of action of the other spouse when those actions cannot be imputed to the insured spouse. The marriage relationship should not be used as a basis for such a law. Married people are still individuals and responsible for their own acts. Vicarious liability is not an attribute of marriage.

---

[1] Notably, *Doyle v. Engelke,* 219 Wis. 2d 277, 580 N.W.2d 245 (1998), is a supreme court decision decided after the court of appeals decisions upon which the majority primarily relies, *Jessica M.F. v. Liberty Mutual Fire Insurance Co.,* 209 Wis. 2d 42, 561 N.W.2d 787 (Ct. App. 1997), and *Taryn E.F. v. Joshua M.C.,* 178 Wis. 2d 719, 505 N.W.2d 418 (Ct. App. 1993).

*Shearer v. Dunn County Farmers Mut. Ins. Co.,* 39 Wis. 2d 240, 249, 159 N.W.2d 89 (1968).

¶ 91. Consequently, I believe the only reasonable interpretation of the intentional acts exclusion clause is that it bars coverage for damages arising out of Steven's intentional acts, but does not bar coverage for the damages arising out of Deborah's negligent acts which were alleged as a separate claim in the complaint in this case. Her conduct is at issue, and is alleged to have caused damages with respect to the seventh claim for relief. Those damages are alleged to have arisen out of her conduct, and not out of Steven's intentional acts.

¶ 92. To the extent there is any ambiguity about the meaning of the intentional acts clause as applied to coverage for Deborah's negligence, such ambiguity must be construed in favor of coverage. *Folkman v. Quamme,* 2003 WI 116, ¶ 20, 264 Wis. 2d 617, 665 N.W.2d 857.

¶ 93. For all the above reasons, I respectfully dissent.

¶ 94. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this dissenting opinion.