SAFECO INSURANCE COMPANY OF AMERICA, APPELLANT, *v.* WHITE ET AL.;
FEDERAL INSURANCE COMPANY ET AL., APPELLEES.

[Cite as *Safeco Ins. Co. of Am. v. White,* **122 Ohio St.3d 562, 2009-Ohio-3718.**]

*When a liability insurance policy defines an "occurrence" as an "accident," a negligent act committed by an insured that is predicated on the commission of an intentional tort by another person, e.g., negligent hiring or negligent supervision, qualifies as an "occurrence" — Insurance-policy exclusions that preclude coverage for injuries expected or intended by an insured, or injuries arising out of or caused by an insured's intentional or illegal acts, do not preclude coverage for the negligent actions of other insureds under the same policy that are predicated on the commission of those intentional or illegal acts, e.g., negligent hiring or negligent supervision.*

(Nos. 2008-0304 and 2008-0403 — Submitted February 4, 2009 — Decided August 4, 2009.)

APPEAL from and CERTIFIED by the Court of Appeals for Hamilton County, No. C-070074, 2007-Ohio-7068.

_____

**SYLLABUS OF THE COURT**

1. When a liability insurance policy defines an "occurrence" as an "accident," a negligent act committed by an insured that is predicated on the commission of an intentional tort by another person, e.g., negligent hiring or negligent supervision, qualifies as an "occurrence."

2. Insurance-policy exclusions that preclude coverage for injuries expected or intended by an insured, or injuries arising out of or caused by an insured's intentional or illegal acts, do not preclude coverage for the negligent

actions of other insureds under the same policy that are predicated on the commission of those intentional or illegal acts, e.g., negligent hiring or negligent supervision.

_____

**MOYER, C.J.**

**I**

{¶ 1}  Safeco Insurance Company of America ("Safeco") appeals from a decision declaring that Safeco is obliged to defend and indemnify its insureds, Lance and Diane White ("the Whites"), in connection with a negligence action filed against them after their 17-year-old son, Benjamin, attacked another child.

{¶ 2}  The First District Court of Appeals certified this case pursuant to Section 3(B)(4), Article IV of the Ohio Constitution and App.R. 25, concluding that its judgment conflicts with judgments from other courts of appeals on two questions of law.

{¶ 3}  First, the court of appeals certified a conflict with the Fifth District Court of Appeals decision in *Torres v. Gentry*, Ashland App. No. 06 COA 038, 2007-Ohio-4781, on the following issue: "When an insurance policy defines an 'occurrence' as an 'accident' that results in bodily injury, does an 'occurrence' include injuries that result from an intentional act when the insured[s] seeking coverage are claimed to have been negligent in relation to that intentional act?" Second, the court certified a conflict with the Third District Court of Appeals decision in *United Ohio Ins. Co. v. Metzger* (Feb. 8, 1999), Putnam App. No. 12-98-1, 1999 WL 84201, on the following issue: "When an insurance policy excludes an injury 'which is expected or intended by [an or any] insured * * *'; injuries 'arising out of an illegal act committed by or at the direction of an insured'; or 'any injury caused by a violation of penal law or ordinance committed by or with the knowledge or consent of any insured,' do the exclusions become ambiguous when read in conjunction with a 'Severability of Insurance'

condition, in light of the announced expectation by policyholders that their negligence will be covered?" We accepted Safeco's discretionary appeal on the same issues and consolidated the cases. 117 Ohio St.3d 1457, 2008-Ohio-1635, 884 N.E.2d 67.

{¶ 4} For the following reasons, we answer the first certified question in the affirmative, holding that the negligent acts of the Whites are "occurrences" under the language of the Safeco policies at issue. However, we decline to address the second question, which pertains to potential ambiguities in the policy exclusions, because we find the exclusions to be inapplicable in these circumstances. Accordingly, we affirm the judgment of the court of appeals and hold that the Whites are entitled to coverage under the Safeco policies.

**II**

{¶ 5} In July 2003, 17-year-old Benjamin White attacked and repeatedly stabbed Casey Hilmer, the 13-year-old daughter of Steve and Megen Hilmer, as she was jogging in their neighborhood. Her injuries were not fatal. Benjamin, who lived with his parents, the Whites, at the time of the attack, pleaded guilty to attempted murder and felonious assault. The trial court convicted him and sentenced him to an aggregate term of ten years in prison.

{¶ 6} After Benjamin was convicted, the Hilmers sued Benjamin and the Whites on multiple claims, including battery against Benjamin and negligent supervision, negligent entrustment, and negligent infliction of emotional distress against the Whites. The matter proceeded to a jury trial.

{¶ 7} The jury made several findings relevant to our review. First, the jury found that Benjamin had committed a battery, an intentional tort, against Casey Hilmer and that his intentional acts had also caused Steve Hilmer to suffer emotional distress. Second, the jury found that the Whites had been negligent in their supervision of Benjamin, and that this negligence had also injured Casey Hilmer and caused Steve Hilmer to suffer emotional distress. Third, the jury

found that the Hilmers were owed $6,500,000 in compensatory damages for these combined torts. Fourth, the jury found that Benjamin was 30 percent responsible for the Hilmers' injuries and that the Whites were 70 percent responsible. The jury also awarded the Hilmers $3,500,000 in punitive damages against Benjamin.

{¶ 8} At the time of the attack, the Whites had four insurance policies: a homeowner's policy and a separate umbrella policy, both issued by Safeco, a second homeowner's policy issued by appellee Pacific Indemnity Company ("Pacific"), and an umbrella policy issued by appellee Federal Insurance Company ("Federal"). When the Hilmers filed suit, the Whites sought a defense and indemnification from each carrier. Pacific and Federal agreed to defend them, but Safeco refused. All, however, expressly denied any obligation to indemnify the Whites.

{¶ 9} During the pendency of the suit, Safeco filed the instant action, seeking a declaratory judgment that it has no obligation to defend or indemnify the Whites in relation to claims arising out of their son's intentional act. The trial court consolidated Safeco's declaratory-judgment action with the Hilmers' action, and the insurance companies and the Whites filed motions for summary judgment on the issue of coverage under the policies. Following the jury's verdict, however, Pacific and Federal withdrew their motions for summary judgment, agreed to indemnify the Whites under the terms of their policies, and claimed that Safeco should share in the cost. Safeco continued to aver that the Whites were not entitled to coverage under its policies.

{¶ 10} The trial court granted summary judgment in favor of the Whites, entering a declaratory judgment that Safeco was required to defend and indemnify the Whites in connection with the underlying action. Federal and Pacific subsequently settled with the Hilmers on behalf of the Whites and asked the court to order Safeco to reimburse Federal and Pacific for Safeco's share of the Whites' attorney fees and the settlement.

{¶ 11} On appeal, the First District Court of Appeals affirmed the trial court, holding that the Whites' negligence constituted an "occurrence" pursuant to language in the Safeco policies, even though it related "to the failure to prevent intentional conduct." *Safeco Ins. Co. of Am. v. Federal Ins. Co.*, Hamilton App. No. C-070074, 2007-Ohio-7068, ¶ 19. The appellate court further held that a severability clause in the Safeco policies created an ambiguity with respect to the application of an exclusion for injuries caused by the intentional act of another insured and that this ambiguity must be read in favor of coverage for the Whites. Id. at ¶ 26.

### III

{¶ 12} Safeco contends that its policies do not provide coverage for the Whites' negligence for two reasons: (1) the injury in this case resulted from an intentional act by Benjamin, an insured under the policies, and therefore the act was not an "occurrence," which both policies define as an "accident," and (2) the policies explicitly exclude coverage for the intentional acts of an insured, and the severability clause in both policies does not render the language in the exclusionary clauses ambiguous.

{¶ 13} Federal and Pacific argue that Safeco's policies provide coverage because the Whites' acts were accidental and thus constitute an "occurrence" under the policies. Moreover, they contend that the exclusionary language in the Safeco policies is ambiguous because of a severability clause that provides that the insurance applies separately to each insured.

{¶ 14} Before we address these arguments, we review the relevant provisions in the Safeco policies and our caselaw on the general principles applicable when interpreting insurance policies.

*A. The Safeco insurance policies*

{¶ 15} The homeowner's policy issued by Safeco expressly names Lance and Diane White as insureds, and the definition of "insured" contained in the

policy includes their son, Benjamin. This policy provides coverage when "a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies." According to the policy, " '[o]ccurrence' means *an accident*" (emphasis added) that results in bodily injury or property damage. The policy expressly excludes coverage for bodily injury or property damage that "is expected or intended by an insured or which is the foreseeable result of an act or omission intended by an insured." Moreover, the contract excludes coverage for injuries "arising out of any illegal act committed by or at the direction of an insured."

**{¶ 16}** The umbrella policy issued by Safeco expressly names Lance White as the insured, and the definition of "insured" includes both Diane and Benjamin. The contract provides coverage for "personal injury or property damage caused by an occurrence," and "occurrence" is defined as "an accident" that results in personal injury or property damage. The umbrella policy excludes coverage for "[a]ny injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of any insured," as well as for "[a]ny act or damage which is expected or intended by any insured." In addition, both policies contain a severability clause that states, "This insurance applies separately to each insured."

**{¶ 17}** As we stated in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, our task when interpreting an insurance policy is to "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." Id. at ¶ 11, citing *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. Moreover, "[w]e look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." Id., citing *Alexander v. Buckeye*

6

*Pipe Line Co*. (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus.

{¶ 18} We further stated in *Galatis* that "where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party."  Id. at ¶ 13, citing *Cent. Realty Co. v. Clutter* (1980), 62 Ohio St.2d 411, 16 O.O.3d 441, 406 N.E.2d 515.  Because the insurer, not the insured, typically drafts the language in an insurance policy, "an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured." Id., citing *King v. Nationwide Ins. Co*. (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.

{¶ 19} With this policy language and caselaw in mind, we consider the issues presented for our review.

*B. Negligence related to an intentional act as an "occurrence"*

{¶ 20} The first issue presented is whether Casey Hilmer's injury resulted from an "occurrence" for purposes of Lance and Diane White's claim for coverage under the Safeco policies.

{¶ 21} Both policies define an "occurrence" as an "accident" that results in injury or property damage.  In *Hybud Equip. Corp. v. Sphere Drake Ins. Co*. (1992), 64 Ohio St.3d 657, 666, 597 N.E.2d 1096, we stated that "[i]n its common, ordinary use, the word 'accidental' means unexpected, *as well as unintended*."  (Emphasis added.)  We similarly recognized in *Gearing v. Nationwide Ins. Co*. (1996), 76 Ohio St.3d 34, 38, 665 N.E.2d 1115, that "inherent in a policy's definition of 'occurrence' is the concept of an incident of an accidental, *as opposed to an intentional, nature*."  (Emphasis altered.) Furthermore, in *Rothman v. Metro. Cas. Ins. Co*. (1938), 134 Ohio St. 241, 247, 12 O.O. 50, 16 N.E.2d 417, this court acknowledged that " 'accident,' as the term is ordinarily used, is a more comprehensive term than 'negligence,' and in its

common signification means an unexpected happening without intention or design." Id. at 247, citing *Commonwealth Cas. Co. v. Headers* (1928), 118 Ohio St. 429, 161 N.E. 278. Thus, we held in *Rothman* that absent contrary language in a policy, "if the injury was not intentionally caused, then it was accidentally suffered." Id. at 246, 16 N.E.2d 417.

{¶ 22} Here, Benjamin intentionally injured 13-year-old Casey Hilmer, but the jury found the Whites negligent with respect to Benjamin's act. In other words, from Benjamin's perspective, the act was intentional, but from the perspective of his parents, it was accidental. Thus, for purposes of coverage, the question is whether the accidental or intentional nature of the act that caused Casey's injury should be determined from the perspective of Benjamin or from the perspective of his parents.

{¶ 23} We addressed a similar issue in *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243. Doe, who had been sexually molested while living in a residence for the mentally retarded, sued the facility's operator for negligent retention and supervision of the employees who committed the molestation. Id. at 389. The operator of the facility sought coverage pursuant to its insurance policy, but the carrier denied the claim and filed a declaratory-judgment action claiming that it had no duty to provide coverage. Id. at 390. The trial court entered summary judgment in favor of the carrier, and the court of appeals affirmed, holding that public policy bars coverage not only for the intentional act of sexual molestation but also for negligence with regard to the molestation. We reversed, however, and held that "Ohio public policy permits a party to obtain liability insurance coverage for negligence related to sexual molestation when that party has not committed the act of sexual molestation." Id. at syllabus.

{¶ 24} Thus, we held that liability coverage hinges on whether the act is intentional from the perspective of the person seeking coverage. As we stated, "the intentions of the molester are immaterial to determining whether the

8

allegedly negligent party has coverage." *Doe,* 90 Ohio St.3d at 393, 738 N.E.2d 1243, citing *Silverball Amusement, Inc. v. Utah Home Fire Ins. Co.* (W.D.Ark.1994), 842 F.Supp. 1151, 1160, affirmed (C.A.8, 1994), 33 F.3d 1476, citing *Sena v. Travelers Ins. Co.* (D.N.M.1992), 801 F.Supp. 471, 475. Furthermore, we explained, "the critical issue is the nature of the intent – inferred or otherwise – *of the party seeking coverage*." (Emphasis added.) Id. at 394, 738 N.E.2d 1243, citing *Preferred Mut. Ins. Co. v. Thompson* (1986), 23 Ohio St.3d 78, 81, 23 OBR 208, 491 N.E.2d 688, and *Transamerica Ins. Group v. Meere* (1984), 143 Ariz. 351, 356, 694 P.2d 181.

{¶ 25} We concluded that "the intentions or expectations of the negligent insured must control the coverage determination, and not the intentions or expectations of the molester." *Doe,* 90 Ohio St.3d at 393, 738 N.E.2d 1243, citing *Silverball*, 842 F.Supp. at 1160. We reasoned that a contrary decision would "effectively dissolve[ ] the distinction between intentional and negligent conduct, allowing the intentional act to devour the negligent act for the purpose of determining coverage." Id., quoting *Silverball*, 842 F.Supp. at 1163.

{¶ 26} Although the issue in *Doe* was whether Ohio public policy permits insurance coverage for negligence arising out of a third party's illegal act, our rationale applies to this case in that whether the act is intentional must be determined from the perspective of the person seeking coverage. In addition, many other jurisdictions have held that an "occurrence" exists if the person seeking coverage was negligent with regard to the intentional act. See, e.g., *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.* (Iowa 2002), 642 N.W.2d 648, 654; *Capital Alliance Ins. v. Thorough-Clean, Inc.* (Ala.1994), 639 So.2d 1349, 1352; *Durham City Bd. of Edn. v. Nat. Union Fire Ins. Co.* (1993), 109 N.C.App. 152, 162, 426 S.E.2d 451; *Atlantic Employers Ins. Co. v. Tots & Toddlers Pre-School Day Care Ctr., Inc.* (App.Div.1990), 239 N.J. Super. 276, 284-285, 571 A.2d 300; *Am. States Ins. Co. v. Borbor* (C.A.9, 1987), 826 F.2d

888, 895; see also 43 American Jurisprudence 2d (1982) 766, Insurance, Section 708; 2 Allan D. Windt, Insurance Claims and Disputes (5th Ed.2007) 65-68, Section 11:3.

{¶ 27} Accordingly, we hold that when a liability insurance policy defines an "occurrence" as an "accident," a negligent act committed by an insured that is predicated on the commission of an intentional tort by another person, e.g., negligent hiring or negligent supervision, qualifies as an "occurrence." In this case, neither Lance nor Diane intentionally injured Casey Hilmer. From their perspective, the injury was accidental, and thus the act that caused her injury constitutes an "occurrence" as defined in the policies they purchased from Safeco. Accordingly, we answer the first certified conflict question in the affirmative.

### C. Policy exclusions

{¶ 28} The second issue presented is whether any of the policy exclusions preclude coverage. The parties and the court of appeals appear to agree that, unless found to be ambiguous, the intentional-act and illegal-act exclusions in the homeowner's and umbrella policies preclude coverage for all the injuries in this case, whether caused by Benjamin's intentional acts or the Whites' negligent acts. Pacific and Federal argue that the use of the words "an insured" and "any insured" in the exclusions creates an ambiguity that must be read against Safeco when the provisions are read in conjunction with the severability clauses in the policies. See *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 13, citing *Cent. Realty Co.*, 62 Ohio St.2d 411, 16 O.O.3d 441, 406 N.E.2d 515 (when a written contract is standardized between parties of unequal bargaining power, an ambiguity will be construed in favor of the nondrafting party).

{¶ 29} However, before considering whether the exclusions are ambiguous, we must determine whether they are applicable at all to these circumstances, and we do not find the answer to this question to be a foregone conclusion in view of the different types of torts at issue in this case. In fact, the

inquiry raises a separate question that ultimately controls: Do policy exclusions that preclude coverage for the intentional and/or illegal acts of an insured also preclude coverage for related negligent acts of other insureds? After reviewing our caselaw and the caselaw from other states, which are split on this topic, we conclude that the exclusions do not preclude coverage for such negligent acts.

{¶ 30} As with the previous issue, *Doe* is instructive. There, we explored the distinction between injuries arising from intentional and/or illegal acts and those arising from acts like negligent supervision. As in this case, that case also featured allegations of both intentional torts (sexual molestation) and related negligent torts (negligent supervision, retention, and failure to warn) and a dispute over whether the negligent acts were covered by an insurance policy. *Doe*, 90 Ohio St.3d at 389–390, 738 N.E.2d 1243.

{¶ 31} We held that public policy permits a party to obtain liability insurance coverage for negligence related to intentional acts when the negligent party did not commit the intentional act. Id. at syllabus. In coming to that conclusion, we partially overruled a prior decision, *Cuervo v. Cincinnati Ins. Co.* (1996), 76 Ohio St.3d 41, 665 N.E.2d 1121, that held that insurance coverage for a negligent-supervision claim is barred by the public policy against permitting liability insurance for intentional torts because the negligence damages "flow from" the intentional tort committed, id. at 44. *Doe* at 393. We rejected the *Cuervo* approach as logically untenable "because the intentions of the [party who committed the intentional tort] are immaterial to determining whether the allegedly negligent party has coverage." *Doe*, 90 Ohio St.3d at 393, 738 N.E.2d 1243, citing *Silverball*, 842 F.Supp. at 1160.

{¶ 32} As with the previous question, the portions of *Silverball* cited in *Doe* remain instructive: " 'The ultimate effect of [those opinions denying coverage] leads to a metamorphosis in which certain negligent actions are transformed by the court into intentional actions for the purposes of deciding

negligent hiring cases involving sexual abuse. *Such a decision effectively dissolves the distinction between intentional and negligent conduct, allowing the intentional act to devour the negligent act for the purpose of determining coverage.* The correct method of analyzing this issue in cases with the factual setting and insurance policy provisions involved * * * *would deal with each act on its own merits * * *.*' " (Emphases added.) Id. at 393, quoting *Silverball*, 842 F.Supp. at 1163. We elaborated on this reasoning in *Doe*, noting that an "interpretation that refuses to distinguish between the abuser's intentional conduct and the insured's alleged negligence would impermissibly ignore the plain language of an insurance policy that excludes from coverage bodily injury that was expected or intended from the standpoint of the insured." Id. at 394.

{¶ 33} These passages show that torts like negligent supervision, hiring, retention, and entrustment are separate and distinct from the related intentional torts (committed by other actors) that make the negligent torts actionable. Thus, in determining whether a policy exclusion precludes coverage for that negligent act, we must examine the injuries arising from the negligent act on their own accord, not as part of the intentional act. We must also remember that a policy exclusion "will be interpreted as applying only to that which is *clearly* intended to be excluded." (Emphasis sic.) *Hybud Equip Corp.*, 64 Ohio St.3d at 665, 597 N.E.2d 1096.

{¶ 34} The two insurance policies at issue in this case each have two exclusions that could apply to these circumstances. The homeowner's policy precludes coverage for injuries that are "expected or intended by an insured" or that "aris[e] out of any illegal act committed by or at the direction of an insured"; the umbrella policy precludes coverage for injuries "caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of any insured" and for "[a]ny act or damage which is expected or intended by any insured." Although each exclusion is worded slightly differently, the clear import

12

is that the policies preclude coverage for injuries arising from or caused by the intentional or illegal acts of an insured.

**{¶ 35}** These exclusions plainly apply to Benjamin's acts: he intentionally stabbed Casey, and the injuries he inflicted upon her and her family arose from the illegal acts he committed. Safeco would end the analysis there, so that Benjamin's involvement precludes coverage for all related claims because Benjamin was insured under the same policy as the Whites.

**{¶ 36}** This view fails to acknowledge the separate nature of the negligent-supervision and negligent-entrustment torts. To succeed on any claim of negligence, the plaintiff must show that the defendant breached an applicable duty of care and that the breach proximately caused the plaintiff's injuries. See *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 10. Thus, to succeed on both claims, the Hilmers were required to show that the Whites breached their duties to supervise Benjamin and not to entrust him with a dangerous instrument and that *these breaches* proximately caused the Hilmers to suffer injuries. See also *Nearor v. Davis* (1997), 118 Ohio App.3d 806, 813, 694 N.E.2d 120 (further defining the elements of negligent supervision and negligent entrustment).

**{¶ 37}** This last element is crucial. For the Whites to be liable to the Hilmers, the Hilmers were required to show that they were injured *by the Whites' breaches of duty*. While Benjamin's intentional torts relate to the proximate-causation element (i.e., the Whites' failure to act with ordinary care enabled Benjamin to injure Casey), the injuries arising from the two types of torts are distinct. To prevail, the Hilmers had to demonstrate a separate injury from the Whites' negligent failure to monitor Benjamin, one that did not arise from intentional or illegal actions as contemplated by the policy exclusions.

**{¶ 38}** As the jury interrogatories reveal, separate injuries were alleged and proved in this case. The jury determined that the Hilmers were injured by

both Benjamin's intentional battery and intentional infliction of emotional distress *and* the Whites' negligent supervision and negligent infliction of emotional distress. These separate causes of action produced distinct injuries, for which Benjamin and the Whites were separately liable; the jury found that Benjamin was responsible for 30 percent of the Hilmers' compensatory damages for his intentional actions, whereas the Whites were responsible for 70 percent of the Hilmers' damages for their negligence. Thus, the Whites were held separately liable for their own actions, which were neither intentional nor illegal; the injuries they caused were distinct from the injuries caused by Benjamin's intentional and illegal acts. Therefore, the intentional-act and illegal-act policy exclusions do not apply to the negligence claims against the Whites.

**{¶ 39}** We acknowledge that a split has arisen in the federal and state courts that have examined this precise issue. Several courts have followed the above approach, examining each tort on its own merits and declining to apply intentional-act and illegal-act exclusions (or similar exclusions) to preclude coverage for negligent acts related to intentional torts. See, e.g., *C.P. v. Allstate Ins. Co.* (Alaska 2000), 996 P.2d 1216, 1225–1226 ("From the perspective of insureds whose acts are alleged to have negligently, but not criminally or intentionally, been a cause of a claimant's injury, these exclusions do not apply to the negligence claims against them" [at 1226]); *Silverball*, 842 F.Supp. at 1159–1165 ("an insurer must provide coverage and a legal defense to an insured where a complaint alleges that an employer was negligent in hiring and supervision of an employee who subsequently committed an intentional tort. An insurance policy would require an exceedingly precise exclusionary clause to avoid that fundamental principle, and there is no such clause in the instant case" [at 1159]); *Talley v. MFA Mut. Ins. Co.* (1981), 273 Ark. 269, 274–275, 620 S.W.2d 260; *U.S. Fidelity & Guar. Co. v. Open Sesame Child Care Ctr.* (N.D.Ill.1993), 819 F.Supp. 756, 760 ("In refusing to separate the employer's alleged negligence from

14

the employee's intentional conduct, [other] courts impermissibly ignored the employer's independent acts which gave rise to the alleged tort"); *Frankenmuth Mut. Ins. Co. v. Williams* (Ind.1997), 690 N.E.2d 675, 678–680; *St. Paul Fire & Marine Ins. Co. v. Schrum* (C.A.8, 1998), 149 F.3d 878, 880–881 (applying Missouri law and noting that the intentional tort was "merely incidental" to the negligent-supervision claim, making the negligence a separate and nonexcluded cause of the victim's injuries); *Bd. of Public Edn. of the School Dist. of Pittsburgh v. Natl. Union Fire Ins. Co.* (Pa.Super.1998), 709 A.2d 910, 916-917 ("Where it is alleged that negligence allowed a crime to occur, does the claim against the negligent arise from the negligence or from the criminality? We believe it is the former" [at 917]).

{¶ 40} Other courts have taken the opposite approach, finding that the injuries from negligent conduct related to an intentional tort are inextricably related to the injuries arising from the intentional tort, and therefore coverage is precluded for both under the intentional-act and illegal-act exclusions. See, e.g., *Farmer v. Allstate Ins. Co.* (C.D.Cal.2004), 311 F.Supp.2d 884, 893–897; *W. Am. Ins. Co. v. Embry* (Apr. 25, 2005), W.D.Ky. No. Civ. A. 3:04CV-47-H, 2005 WL 1026185 (applying Kentucky law, and finding that the exclusions evidenced "a clear and specific intent to exclude all claims arising from sexual molestation, even those based on some theory other than the insured's intentional conduct – a theory such as negligence"); *Illinois Farmers Ins. Co. v. M.S.* (Mar. 31, 2005), D.Minn. No. Civ. 04-3102RHKJSM, 2005 WL 741898 ("when an insurance policy excludes coverage for an injury 'arising out of' or 'resulting from' certain specified conduct * * * and such conduct occurs, coverage is also excluded for the insured's negligent supervision if the injury would not have occurred *but for* the specified conduct" [emphasis sic]); *Northwest G.F. Mut. Ins. Co. v. Norgard* (N.D.1994), 518 N.W.2d 179, 184; *J.G. v. Wangard* (Wis.2008), 313 Wis.2d 329, 753 N.W.2d 475, ¶ 59–60.

**{¶ 41}** The decisions of the courts that are in conflict with our decision here appear to follow the *Cuervo* approach—that damages from negligent acts "flow from" related intentional acts—but we soundly rejected that reasoning in *Doe*. *Doe*, 90 Ohio St.3d at 393, 738 N.E.2d 1243. Our decision to join the courts that have found the intentional-act and illegal-act exclusions inapplicable to acts of negligence related to intentional torts is a continuation of and consistent with the "examine each act on its own merits" approach established in *Doe* and our response to the first certified question. As we noted in *Doe*, this approach comports with common sense: "While it is indeed true that the average person would likely find liability coverage for [intentional torts] loathsome, the same rationale cannot extend to negligence. The average person would no doubt find such coverage to be the purpose for which he obtained insurance." *Doe*, 90 Ohio St.3d at 395, 738 N.E.2d 1243.

**{¶ 42}** Accordingly, we hold that insurance-policy exclusions that preclude coverage for injuries expected or intended by an insured, or injuries arising out of or caused by an insured's intentional or illegal acts, do not preclude coverage for the negligent actions of other insureds under the same policy that are predicated on the commission of those intentional or illegal acts, e.g., negligent hiring or negligent supervision.

**{¶ 43}** Because we find these exclusions to be inapplicable, the second certified question, which pertains to whether the exclusions are ambiguous, is moot. We therefore decline to address it.

**IV**

**{¶ 44}** Because the Whites' actions qualify as "occurrences" under the applicable policies and because no exclusions apply, the Whites are entitled to coverage under Safeco's policies. We therefore affirm the decision of the court of appeals, albeit for different reasons.

Judgment affirmed.

16

PFEIFER, O'CONNOR, and LANZINGER, JJ., concur.

CUPP, J., concurs separately.

LUNDBERG STRATTON and O'DONNELL, JJ., concur in part and dissent in part.

_____

**CUPP, J., concurring,**

{¶ 45} I concur in the majority opinion in its resolution of the first certified question. However, for clarity, I would rephrase the first syllabus paragraph to read: "A liability insurance policy that defines an 'occurrence' as an 'accident' that results in injury includes within that definition an injury resulting from an intentional act of one insured when another insured seeking coverage is alleged to have been only negligent in relation to that intentional act." I believe that this language more closely reflects the issue before this court as presented in the first certified-conflict question and in appellant's second proposition of law.

{¶ 46} I also concur in the majority opinion's conclusion that coverage exists under the homeowner's policy at issue herein and agree with its rationale for that conclusion.

{¶ 47} I take a different approach, however, in analyzing the umbrella policy, but reach the same conclusion. In contrast to the analysis undertaken with respect to the homeowner's policy, I do not believe that the issue of coverage under the umbrella policy can be determined simply by pointing out that the conduct of one insured was negligent while the conduct of another insured was intentional. I would answer the second certified-conflict question and address appellant's first proposition of law, and I would conclude that the term "any insured" when used to define the exclusions in the umbrella policy in conjunction with the policy's requirement that the insurance be applied separately to each insured is ambiguous. As I view it, the term "any insured" as used in the

umbrella-policy exclusion raises an ambiguity that the term "an insured" does not raise in the homeowner's policy.

{¶ 48} A clearly worded exclusion in an insurance policy may, without violating public policy, exclude all coverage under the policy for an injury to a third party that is intentionally caused by one insured even if the conduct by another insured with regard to the injury is merely negligent. However, I find that the exclusionary language used in the umbrella policy is ambiguous in this regard. Thus, I arrive at the same ultimate destination as the majority opinion but by a different route.

{¶ 49} It is well established that an ambiguous provision in an insurance policy will be construed strictly against the insurer and liberally in favor of the insured. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. It is equally well established that an ambiguity cannot be created in an insurance policy where there is none. *Hacker v. Dickman* (1996), 75 Ohio St.3d 118, 119, 661 N.E.2d 1005. An ambiguous provision is one that has more than one reasonable interpretation. Id. at 119-120; *Buckeye Union Ins. Co. v. Price* (1974), 39 Ohio St.2d 95, 98-99, 68 O.O.2d 56, 313 N.E.2d 844.

{¶ 50} The ambiguity in this matter derives from the use of the term "any insured," which is employed in the umbrella policy in defining the coverage exclusions relevant to this appeal. The umbrella policy excludes coverage for "[a]ny injury caused by a violation of penal law or ordinance committed by or with the knowledge or consent of *any insured*" and "[a]ny act or damage which is expected or intended by *any insured*, or which is the foreseeable result of an act or omission intended by *any insured*." (Emphasis added.) The severability clause included in the umbrella policy provides: "This insurance applies separately to each insured."

{¶ 51} The ambiguity in the foregoing exclusions derives from the fact that there is more than one reasonable interpretation of the term "any insured."

18

For example, some courts have found that the term "any" can, and often does, have the same meaning as the word "an." See, e.g., *Brumley v. Lee* (1998), 265 Kan. 810, 813-815, 963 P.2d 1224. Other courts have acknowledged that although "an" may mean "any," a difference between the terms nevertheless exists because "an" is seldom used to denote plurality, but "any" can denote plurality. See, e.g., *McFarland v. Utica Fire Ins. Co.* (S.D.Miss.1992), 814 F.Supp. 518, 525, 526. Definitions in prior editions of Black's Law Dictionary support both positions: "an" is defined as "equivalent to 'one' or 'any'; seldom used to denote plurality"; whereas "any" is defined as indicating " 'all' or 'every' as well as 'some' or 'one.' " Black's Law Dictionary (5th Ed.1979) 77, 86. Against this backdrop, it is not unreasonable to conclude that "any insured" could be interpreted to apply either singularly to " 'any one of the insureds' [only] or * * * collectively to the whole group of insureds." See *Transport Indemn. Co. v. Wyatt* (Ala.1982), 417 So.2d 568, 571.

{¶ 52} Because of these different possible constructions of the term "any insured," the umbrella-policy exclusions are reasonably susceptible of more than one interpretation. On one hand, if "any" is interchangeable with "an" and means "all," application of the severability clause results in the policy provisions applying equally to all insureds. Accordingly, if one insured engages in an act for which coverage is excluded by the policy, coverage is precluded for all insureds. For purposes of this case, the implication is that all the insureds would be excluded from coverage under the umbrella policy.

{¶ 53} On the other hand, if "any" is interchangeable with "an" but instead means "one," application of the severability clause results in the policy exclusions applying only to the insured who committed the act for which coverage is excluded. This same meaning also occurs if the meaning of the word "any" is distinct from, and more inclusive than, the word "an." Again, for purposes of this case, the ramification is that the umbrella-policy exclusions apply

only to the insured who engaged in the intentional act and not to any negligent insureds. The negligent insureds remain covered.

{¶ 54} This uncertainty in the interpretation of "any insured" in the policy exclusions could have been avoided through careful drafting. The following sentence is an example of a clearly written insurance-policy exclusion: " 'If you *or any person insured under this policy* causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you *or any other insured* for this loss.' " (Emphasis added.) *Hall v. State Farm Fire & Cas. Co.* (C.A.5, 1991), 937 F.2d 210, 213 (court held that pursuant to the exclusion, a wife could not recover damages for losses she sustained when her husband [another insured] intentionally burned down their house), cited in *Wagner v. Midwestern Indemn. Co.* (1998), 83 Ohio St.3d 287, 699 N.E.2d 507.

{¶ 55} Thus, based on the foregoing, I would hold that the term "any insured" used in defining the exclusions in the umbrella policy is ambiguous when read in conjunction with the policy's severability clause. Accordingly, the case law regarding the interpretation of ambiguous policy provisions applies, and the policy must be construed in favor of the insured. *King*, 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.

{¶ 56} On this rationale, I would hold that coverage should be afforded to the insureds under the umbrella policy.

_____

**O'DONNELL, J., concurring in part and dissenting in part.**

{¶ 57} I concur with the majority in its resolution of the first certified question.

{¶ 58} However, unlike the majority, I would hold that the intentional-act exclusions in both the homeowner's and the umbrella policies are applicable to all the injuries suffered in this case, and thus, I would reach the second certified

20

question regarding whether the severability clauses contained in those policies render the exclusions ambiguous.

**Exclusion of Coverage**

{¶ 59} The second issue presented is whether a policy's exclusion of coverage for intentional acts of an insured is ambiguous because of a severability clause that provides that the policy applies separately to each insured. Before considering the severability clauses in the Safeco policies, it is necessary to examine the policies' exclusions.

{¶ 60} In this case, the homeowner's policy excludes coverage for an injury that "is expected or intended by *an insured*" or that "aris[es] out of any illegal act committed by or at the direction of *an insured*." (Emphasis added.) The umbrella policy expressly excludes coverage for "[a]ny injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of *any insured*," as well as for "[a]ny act or damage which is expected or intended by *any insured*." (Emphasis added.)

{¶ 61} Commentators and courts have recognized that whether such exclusions of coverage apply depends on whether the exclusion refers to "the insured," "an insured," or "any insured." As explained in 2 Windt, Insurance Claims and Disputes (5th Ed.2007), 159-160, Section 11:8, "[m]ost exclusions are written to apply to actions taken by 'the' insured. In that event, the exclusion would be inapplicable as to any insured that did not engage in the proscribed actions." See also *Tri-S Corp. v. W. World Ins. Co.* (2006), 110 Hawai'i 473, 492, 135 P.3d 82; *N. Sec. Ins. Co. v. Perron* (2001), 172 Vt. 204, 219-222, 777 A.2d 151; *Morgan v. Cincinnati Ins. Co.* (1981), 411 Mich. 267, 307 N.W.2d 53.

{¶ 62} The phrase "any insured," however, makes the exclusion applicable to *all* insureds whenever any one of them has committed the prohibited act. As the Supreme Court of Colorado stated in *Chacon v. Am. Family Mut. Ins. Co.* (Colo.1990), 788 P.2d 748, " 'the phrase "any insured" unambiguously

expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured.' " Id. at 751, quoting *Sales v. State Farm Fire & Cas. Co.* (C.A.11, 1988), 849 F.2d 1383, 1385. See also 2 Windt, Insurance Claims and Disputes 155-160, Section 11:8.

{¶ 63} Courts are divided on the question whether the phrase "an insured," which appears in the homeowner's policy in this case, means "the" insured or "any" insured. Some courts have concluded that the phrase "an insured" is ambiguous and should be construed against the insurer because it could mean either "the insured" or "any insured." See, e.g., *Michigan Millers Mut. Ins. Corp. v. Benfield* (C.A.11, 1998), 140 F.3d 915, 926 (Florida law); *McFarland v. Utica Fire Ins. Co.* (S.D.Miss.1992), 814 F.Supp. 518, 525-526 (Mississippi law).

{¶ 64} A majority of courts, however, hold that the phrase "an insured" should be interpreted as "any insured." As the Supreme Court of Michigan explained in *Allstate Ins. Co. v. Freeman* (1989), 432 Mich. 656, 443 N.W.2d 734, " ' "[a]" or "an" is an indefinite article often used in the sense of "any" and applied to more than one individual object; whereas "the" is an article which particularizes the subject spoken of.' " Id. at 698, quoting *Allstate Ins. Co. v. Foster* (D.Nev.1988), 693 F.Supp. 886, 889. Thus, the court in *Freeman* stated that "if we place the word 'a' or 'an' in front of the word 'insured,' then we must conclude that 'an insured' unambiguously means 'any insured.' " Id. at 699; see also *Utah Farm Bur. Ins. Co. v. Crook* (Utah 1999), 980 P.2d 685, 688; *Vance v. Pekin Ins. Co.* (Iowa 1990), 457 N.W.2d 589, 593; *Woodhouse v. Farmers Union Mut. Ins. Co.* (1990), 241 Mont. 69, 72, 785 P.2d 192; *Farmers Ins. Co. v. Hembree* (1989), 54 Wash.App. 195, 203-204, 773 P.2d 105; *Foster*, 693 F.Supp. at 889; *Bryant v. Allstate Ins. Co.* (E.D.Ky.1984), 592 F.Supp. 39, 41; *Travelers Ins. Co. v. Blanchard* (La.App.1983), 431 So.2d 913, 914-915.

**{¶ 65}** The majority view is consistent with our prior cases interpreting indefinite articles such as "an," and thus I would adopt it. The word "an" is a variant of the word "a," and as the court stated in *Judy v. Bur. of Motor Vehicles*, 100 Ohio St.3d 122, 2003-Ohio-5277, 797 N.E.2d 45, "the word 'a' is an indefinite article used to denote a [noun] that is 'undetermined, unidentified, or unspecified.' " Id. at ¶ 19, quoting Webster's Third New International Dictionary (1986) 1; see also id. at 75 (cross-referencing "an" with "a"). Therefore, a liability insurance policy that excludes coverage for the intentional acts of "an insured" excludes coverage for the intentional acts of any insured.

**{¶ 66}** In this case, the homeowner's policy issued by Safeco excludes coverage for injuries caused by the intentional or illegal acts of "an insured," while the umbrella policy excludes coverage for injuries caused by the intentional or illegal acts of "any insured." Both exclusions apply in this case because Benjamin is an insured under the policies and because he intentionally caused the injuries for which his parents sought coverage. I disagree with the majority's view that the injuries caused by the negligence of Lance and Diane White are distinct from the injuries caused by Benjamin's intentional acts. Accordingly, although these policies would otherwise provide coverage to Lance and Diane for their negligence, coverage is barred by the intentional-act-by-any-insured exclusion.

### Severability

**{¶ 67}** The foregoing discussion does not end the analysis of the second issue in this case, however, because it is further necessary to consider whether these exclusions are ambiguous when viewed in the context of the severability clause contained in both policies, which states, "This insurance applies separately to each insured."

**{¶ 68}** This issue appears to present a matter of first impression for this court. "A severability clause provides that each insured will be treated

independently under the policy." 2 Windt, Insurance Claims and Disputes 161-163, Section 11:8. And as the Supreme Court of Minnesota noted in *Am. Natl. Fire Ins. Co. v. Estate of Fournelle* (Minn.1991), 472 N.W.2d 292, "[t]he intent of a severability clause is to provide each insured with separate coverage, as if each were separately insured with a distinct policy, subject to the liability limits of the policy." Id. at 294, citing *United States Fid. & Guar. Co. v. Globe Indemn. Co.* (1975), 60 Ill.2d 295, 299, 327 N.E.2d 321.

{¶ 69} Courts have taken differing views when interpreting an insurance policy that contains both a severability clause and an exclusion of coverage for the prohibited act of "any insured." In *Fournelle*, for example, the Supreme Court of Minnesota explained that "severability demands that policy exclusions be construed only with reference to the particular insured seeking coverage." 472 N.W.2d at 294, citing *Utica Mut. Ins. Co. v. Emmco Ins. Co.* (1976), 309 Minn. 21, 243 N.W.2d 134, and 13 Appleman, Insurance Law & Practice (Rev.Ed.1976) 633, Section 7486; see also *Premier Ins. Co. v. Adams* (Fla.Dist.Ct.App.1994), 632 So.2d 1054, 1057. Similarly, the Supreme Judicial Court of Massachusetts held in *Worcester Mut. Ins. Co. v. Marnell* (1986), 398 Mass. 240, 244, 496 N.E.2d 158, that if a policy contains both a severability clause and an exclusion of coverage for a prohibited act of "any insured," then "the term 'insured' as used in the * * * exclusion refers only to the person claiming coverage under the policy." The court in *Marnell* recognized, however, that while this interpretation gives effect to the severability clause, it "makes the word 'any' in the * * * exclusion superfluous." Id. at 245.

{¶ 70} Other courts have held that a policy containing both an any-insured exclusion and a severability clause is ambiguous and must be construed in favor of the insured. See, e.g., *State Farm Fire & Cas. Ins. Co. v. Keegan* (C.A.5, 2000), 209 F.3d 767, 771 (Texas law); *Brumley v. Lee* (1998), 265 Kan. 810, 815, 963 P.2d 1224; *W. Am. Ins. Co. v. AV & S* (C.A.10, 1998), 145 F.3d 1224, 1229

24

(Utah law); *Northwestern Natl. Ins. Co. v. Nemetz* (Wis.App.1986), 135 Wis.2d 245, 256, 400 N.W.2d 33.

{¶ 71} A majority of courts, however, have held that a severability clause does not create any ambiguity and does not alter the plain meaning and application of an any-insured exclusion. See, e.g., *J.G. v. Wangard*, 2008-WI-99, 313 Wis.2d 329, 753 N.W.2d 475, ¶ 46-49; *Argent v. Brady* (App.Div.2006), 386 N.J.Super. 343, 355, 901 A.2d 419; *Am. Family Mut. Ins. Co. v. Corrigan* (Iowa 2005), 697 N.W.2d 108, 116-117; *BP Am., Inc. v. State Auto Property & Cas. Ins. Co.*, 2005-OK-65, 148 P.3d 832, ¶ 17-29; *Am. Family Mut. Ins. Co. v. White* (Ariz.App.2003), 204 Ariz. 500, 507, 65 P.3d 449; *Mut. of Enumclaw Ins. Co. v. Cross* (2000), 103 Wash.App. 52, 62, 10 P.3d 440; *Allstate Ins. Co. v. Kim* (D.Hawaii 2000), 121 F.Supp.2d 1301, 1308; *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Assn.* (C.A.11, 1997), 117 F.3d 1328, 1336 (Florida law); *Johnson v. Allstate Ins. Co.*, 1997-ME-3, 687 A.2d 642, ¶ 8-9; *Am. Family Mut. Ins. Co. v. Copeland-Williams* (Mo.App.1997), 941 S.W.2d 625, 629; *Michael Carbone, Inc. v. Gen. Acc. Ins. Co.* (E.D.Pa.1996), 937 F. Supp. 413, 420; *California Cas. Ins. Co. v. Northland Ins. Co.* (1996), 48 Cal.App.4th 1682, 1696-1697, 56 Cal.Rptr.2d 434; *Oaks v. Dupuy* (La.App.1995), 653 So.2d 165, 168-169; *Northwest G.F. Mut. Ins. Co. v. Norgard* (N.D.1994), 518 N.W.2d 179; *Gorzen v. Westfield Ins. Co.* (1994), 207 Mich.App. 575, 578-579, 526 N.W.2d 43; *Chacon*, 788 P.2d at 752; *McCauley Ents., Inc. v. New Hampshire Ins. Co.* (D.Conn.1989), 716 F.Supp. 718, 721; *Great Cent. Ins. Co. v. Roemmich* (S.D.1980), 291 N.W.2d 772, 774.

{¶ 72} The Supreme Court of Colorado's decision in *Chacon* is representative of the majority view. There, the teenage son of Reyes and Sarah Chacon vandalized an elementary school. 788 P.2d at 749. Upon reimbursing the school district for the repairs, the district's insurer sued the Chacons pursuant to a state statute that permitted recovery of up to $3,500 from the parents of a child

who willfully damages a school. Id. The Chacons sought coverage for this liability from their homeowner's insurance carrier, but the carrier denied their claim on the basis of a provision that excluded coverage for damage caused by the intentional act of "any insured," which included their son. Id. The Chacons filed an action to compel coverage, but both the trial court and the appellate court ruled in favor of the carrier. Id. at 749-750. On appeal, the Supreme Court of Colorado held that the exclusion "clearly and unambiguously expresses an intention to deny coverage to all insureds when damage is intended or expected as a result of the actions of any insured." Id. at 752. Furthermore, the court emphasized, "[t]he inclusion of a severability clause within the contract is not inconsistent with the creation of a blanket exclusion for intentional acts." Id. at 752, fn.6.

{¶ 73} This reasoning is persuasive, and I would adopt it. In this case, the Safeco policies exclude coverage for injuries caused by the intentional act of any insured. The language of the severability clause does not suggest that "an insured" or "any insured" means "the insured" or that the exclusions in the policies would not apply in these circumstances. Even if each insured is treated as having a separate policy, the exclusionary language remains unambiguous. As the Supreme Court of North Dakota stated in *Norgard*, " 'the purpose of severability clauses is to spread protection, to the limits of coverage, among all of the * * * insureds. The purpose is not to negate bargained-for exclusions which are plainly worded.' " 518 N.W.2d at 183, quoting *Natl. Ins. Underwriters v. Lexington Flying Club, Inc.* (Ky.App.1979) 603 S.W.2d 490, 492.

{¶ 74} Furthermore, giving the any-insured exclusion its plain meaning does not render the severability clause meaningless, as it would continue to apply in other contexts. See 2 Windt, Insurance Claims and Disputes 164, Section 11:8, citing *St. Katherine Ins. Co. Ltd. v. Ins. Co. of N. Am., Inc.* (C.A.7, 1993), 11 F.3d 707, 710-711 (Illinois law); *5801 Assocs., Ltd. v. Continental Ins. Co.* (C.A.5, 1993), 983 F.2d 662, 664-666; *Silverball Amusement, Inc. v. Utah Home Fire Ins.*

*Co.* (W.D.Ark.1994), 842 F.Supp. 1151, 1154-1155, affirmed (C.A.8, 1994), 33 F.3d 1476. Thus, only one interpretation of the Safeco policies gives effect to both the exclusions and the severability clauses, and as the court stated in *Hacker v. Dickman* (1996), 75 Ohio St.3d 118, 119-120, 661 N.E.2d 1005, "[i]t is only when a provision in a policy is susceptible of more than one reasonable interpretation that an ambiguity exists * * *."

{¶ 75} Accordingly, I would answer the second certified conflict question in the negative and hold that a provision in a liability insurance policy that excludes coverage for injuries caused by the intentional act of any insured is not made ambiguous by a severability clause providing that the insurance applies separately to each insured.

{¶ 76} Because I would conclude that the injuries caused by the negligent acts of Lance and Diane are not distinct from the injuries caused by the intentional acts of Benjamin, I would hold that the intentional-act exclusions in the policies apply to all the injuries in this case. Furthermore, I would hold that the severability clauses do not render the exclusionary clauses ambiguous. Thus, I would hold that the Safeco policies do not provide liability coverage to Lance and Diane White for the injuries in this case and would therefore reverse the judgment of the court of appeals.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

_____

Jenks, Pyper & Oxley Co., L.P.A., P. Christian Nordstrom, and Scott G. Oxley, for appellant.

Gallagher Sharp, Jay Clinton Rice, and Richard C.O. Rezie, for appellees.

Murray & Murray Co., L.P.A., Dennis E. Murray Sr., and James L. Murray, urging affirmance for amici curiae, Vincent Joseph Bilgen and Gloria Louis.

_____